NAPIER v JACOBS

Docket No. 62946. Submitted July 17, 1984, at Detroit.—Decided
September 3, 1985. Leave to appeal applied for.

Plaintiffs, Michael and Linda Napier, brought an action against
Jeffrey Jacobs, Red Maruszewski, and William Chidester alleg-
ing various state causes of action and against those three
individuals and the City of Highland Park under 42 USC 1983
alleging the deprivation of the civil rights of plaintiff Michael
Napier. Napier and the three individual defendants were all
Highland Park police officers. Napier was shot by Jacobs, who
was off duty, during an altercation involving the four officers.
The claim against the city under 42 USC 1983 alleged that the
city, through the actions or omissions of police supervisory
personnel, adopted a policy of tolerating firearms abuse and the
use of racially derogatory language and that that policy proxi-
mately caused the reckless use of a firearm by Jacobs. The
plaintiffs also alleged that the city had a policy of failing to
properly supervise, train and retrain its officers in the use of

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, New Trial §§ 140, 141.

Amendment, after expiration of time for filing motion for new trial,
in civil case, of motion made in due time period. 69 ALR3d 845.

[2] Am Jur 2d, Judgments §§ 119 et seq.

Power of trial court to dismiss prosecution or direct acquittal on
basis of prosecutor's opening statement. 75 ALR3d 649.

[3] Am Jur 2d, Evidence §§ 1080-1090.

Admissibility, weight, and sufficiency of blood-grouping tests in
criminal cases. 2 ALR4th 500.

[4] Am Jur 2d, Civil Rights §§ 396-399.

See the annotations in the ALR3d/4th Quick Index under Discrimi-
nation.

[5] Am Jur 2d, Civil Rights § 26.

See the annotations in the ALR3d/4th Quick Index under Discrimi-
nation.

[6] Am Jur 2d, Civil Rights §§ 3 et seq.

See the annotations in the ALR3d/4th Quick Index under Discrimi-
nation.

[7] Am Jur 2d, Workmen's Compensation §§ 50, 51.

See the annotations in the ALR3d/4th Quick Index under Discrimi-
nation.

firearms. The jury returned a verdict in favor of plaintiffs against Jacobs on both the state law claims and the civil rights claim and against the city on the civil rights claim. The Wayne Circuit Court, Arthur M. Bowman, J., entered a judgment on the jury verdict, and the city appealed. *Held:*

1. A municipality's liability under 42 USC 1983 must be based on an official custom or policy of the municipality, and the plaintiff must show an affirmative link between the misconduct which caused the alleged deprivation of civil rights and the adoption of any such custom or policy. The evidence in this case did not establish a policy or custom of tolerating firearms abuse or misuse. Furthermore, while the evidence showed, at most, a custom of tolerating racially derogatory language or verbal horseplay among the police officers, the evidence did not establish an affirmative link between the shooting of Napier and that custom.

2. The evidence at trial was insufficient as a matter of law to establish an official policy of toleration of firearm abuse via supervisory inaction, knowledge, or failure to make rules, or to establish a custom of inadequate police training and supervision in the use of firearms.

3. Plaintiffs' claim was not barred by the exclusive remedy provision of the Worker's Disability Compensation Act.

Reversed and remanded for entry of judgment in favor of the defendant city.

1. MOTIONS AND ORDERS — SUFFICIENCY OF EVIDENCE — NEW TRIAL.

A motion for a new trial is not a prerequisite to appellate review of a claim that there was insufficient evidence as a matter of law to support the jury's verdict; a motion for a new trial is necessary to preserve the issue of a verdict's being against the great weight of the evidence.

2. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — COURT RULES.

A motion for a directed verdict is not necessary, under the new court rules, in order for a party to move for a judgment notwithstanding the verdict (MCR 2.610).

3. EVIDENCE — SUFFICIENCY OF EVIDENCE.

The standard of review of a claim of insufficiency of the evidence in a civil case is similar to that for review of a grant or denial of a judgment notwithstanding the verdict: the evidence is to be viewed in the light most favorable to the nonmoving party, giving that party the benefit of every reasonable inference that can be drawn from the evidence and if, after viewing the

evidence in this manner, reasonable men could differ, the question is one for the jury.

4. CIVIL RIGHTS — PLEADING.

A plaintiff, in order to prevail on a claim of deprivation of civil rights under 42 USC 1983, must plead and prove that: (1) the defendant deprived the plaintiff of a right secured by the constitution and laws of the United States, and (2) the defendant deprived the plaintiff of this right while acting under color of state law.

5. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — *RESPONDEAT SUPERIOR.*

Municipalities are persons for purposes of liability for deprivation of civil rights under 42 USC 1983; a municipality cannot, however, be found liable under § 1983 on a theory of *respondeat superior;* the municipality must be sued directly and liability must be based upon an official policy or custom, the execution of which causes the injury, and the plaintiff must show an affirmative link between the incident which occurred and the municipality's policy or custom, showing the defendant's authorization or approval of the conduct.

6. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — OFFICIAL POLICY.

Official policy of a municipality may be established by the omissions of supervisory officials as well as from their affirmative acts; however, absent evidence of supervisory indifference such as acquiescing in a prior pattern of conduct, isolated incidents or a single incident are normally insufficient to establish inaction by supervisors for purposes of liability of the municipality for a claim of deprivation of civil rights under 42 USC 1983.

7. CIVIL RIGHTS — WORKERS' COMPENSATION — EXCLUSIVE REMEDY.

The exclusive remedy provision of the Worker's Disability Compensation Act does not bar a plaintiff's claim of deprivation of civil rights under state or federal statute.

*Theodore Spearman,* and *Julie H. Hurwitz,* of counsel, for plaintiffs.

*James W. McGinnis,* for the City of Highland Park.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

V. J. Brennan, P.J. Defendant, City of Highland Park, (defendant City) appeals as of right from the judgment entered on the jury's verdict awarding plaintiffs $60,000 in damages for defendant City's violation of plaintiff's civil rights under 42 USC 1983.

The case arose out of events which occurred on October 14, 1976, when plaintiff Michael Napier was shot by a fellow Highland Park police officer, Jeffrey Jacobs, who was off duty at the time. Plaintiffs brought suit alleging state law causes of action against Jacobs and two other police officers (Red Maruszewski, who was also off duty, and William Chidester, who was Jacobs's partner), both of whom witnessed the shooting. Defendant City and the three individual officers were also sued under 42 USC 1983. A verdict was returned against Jacobs in the amount of $50,000 for the state claims and $25,000 for the 42 USC 1983 deprivation of civil rights claim. Verdicts of no cause of action were returned in favor of Chidester and Maruszewski. Jacobs is not a party to this appeal.

Testimony established that on October 14, 1976, Napier, a black rookie police officer, was partnered with defendant Chidester, who was white. They were working the midnight shift, which had begun at 11:00 p.m. on October 13. Chidester, as the senior officer, drove their patrol car. While on patrol, Chidester stopped the car to talk with two other officers who informed Napier and Chidester that they had put some Communist Workers' Party bumper stickers on the cars of two white off-duty police officers, Jacobs and Maruszewski, who were in a local bar at the time. Chidester parked the patrol car across the street from the bar to observe Jacobs's and Maruszewski's reaction to the bumper stickers. Later that evening, while Chides-

ter and Napier patrolled, Chidester observed Maruszewski's car parked illegally in front of a taxicab dispatch office on Pasadena. Napier and Chidester went up to the office and found Jacobs and Maruszewski inside. Jacobs, who drove a taxicab part-time, testified that he went to the dispatch office to inquire about getting a bond plate to carry passengers in the City of Detroit.

Chidester made a comment to Jacobs to the effect that "I didn't know you were a liberal", apparently referring to the bumper stickers. Jacobs suggestively grabbed his groin and then called Chidester a "cocksucker". Chidester pulled his service revolver, suggesting that Jacobs "suck on this". Jacobs retorted with "here's yours" and then drew his pistol. Maruszewski also drew his gun.

The focus then turned to Napier, the only officer who had not drawn his gun. Jacobs pointed his gun at Napier, saying "I think I'll shoot an ahbed". Ahbed is Syrian slang terminology for blacks. Napier testified that Jacobs approached him and said he was going to "blow his guts out", to which Napier replied "go ahead, I'm wearing a flak vest. I need it tested anyway." Jacobs then said he would blow Napier's brains out and he pointed the gun in the direction of Napier's head. Napier replied, "If I had any brains I would not be here". According to Napier, Maruszewski commented that a bullet would just bounce off Napier's head since what was in there were rocks. Napier testified that Jacobs then turned away, saying something like "stupid nigger". Napier then retorted "mighty funny you didn't tell anybody I was your long lost brother". Jacobs then turned around toward Napier and the gun discharged into Napier's abdomen.

The first issue for our consideration is whether there was insufficient evidence as a matter of law

to support a jury verdict on defendant City's liability under 42 USC 1983. First, we point out that, contrary to plaintiffs' assertions, a sufficiency of the evidence claim is reviewable on appeal although a motion for a new trial has not been made. *Arnsteen v U S Equipment Co,* 390 Mich 776, 777 (1973).

A motion for new trial must be made in order to preserve the issue of a verdict's being against the great weight of the evidence. *Watson v Dax,* 334 Mich 320; 54 NW2d 674 (1952), *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981), *lv den* 417 Mich 929 (1983). A motion for a directed verdict under former GCR 1963, 515.2 was a prerequisite to a motion for a judgment notwithstanding the verdict. See *Watson, supra.* Under MCR 2.610, a motion for a directed verdict is not necessary in order for a party to move for a judgment notwithstanding the verdict.

In the instant case, defendant City neither moved for a new trial nor for a judgment notwithstanding the verdict. A motion for a directed verdict was made, however, but the motion did not concern the question of whether there was sufficient evidence to go to the jury on the issue of the City's liability. Nonetheless, although procedure via the court rules was not properly followed here, to prevent a miscarriage of justice we will review the evidentiary issue presented by defendant as one that was raised in the directed verdict motion, and we will apply the standards for a review of a motion for judgment notwithstanding the verdict. We believe that review of a sufficiency of the evidence claim in a civil case as presented here would be almost, if not entirely, comparable to the standard of review for the grant or denial of a judgment notwithstanding the verdict.

"A judgment notwithstanding the verdict on defendants' motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for plaintiff. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 695; 310 NW2d 26 (1981). In reaching a decision, the trial court must view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence. *Isom v Farrugia,* 63 Mich App 351, 354-355; 234 NW2d 520 (1975). If after viewing the evidence in this manner reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. *Id."* *Drummey v Henry,* 115 Mich App 107, 110-111; 320 NW2d 309 (1982), *lv den* 417 Mich 895 (1983).

As explained in *Killen v Benton,* 1 Mich App 294, 298; 136 NW2d 29 (1965), a " 'judgment notwithstanding the verdict may be allowed only if there is insufficient evidence, as a matter of law, to make an issue for the jury' ".

42 USC 1983 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."

The plaintiffs alleged and sought to prove at trial that defendant Jacobs acted under color of law as an off-duty police officer and, while so acting, deprived Napier of his right to due process of law under the 14th Amendment. US Const, Am XIV. According to plaintiffs, Napier had the constitutional right to be free from physical harm, violence, and injury. The § 1983 claim against

defendant City included allegations that the City, by and through the acts and/or omissions of the police department supervisory personnel, violated Napier's due process rights by adopting a policy of tolerating firearm abuse and the use of racially derogatory language and that the policy proximately caused Jacobs's reckless use of his firearm in the assault on Napier. The plaintiffs also attempted to prove as an alternative theory of liability that the defendant City had a policy of failing to properly supervise, train, and retrain its officers in the use of firearms.

To establish a right to relief under 42 USC 1983, a plaintiff must plead and prove that: (1) the defendant deprived the plaintiff of a right secured by the constitution and laws of the United States; and (2) the defendant deprived the plaintiff of this right while acting under color of state law. *Moore v Detroit,* 128 Mich App 491, 499; 340 NW2d 640 (1983); *Rushing v Wayne County,* 138 Mich App 121; 358 NW2d 904 (1984), citing *Parratt v Taylor,* 451 US 527; 101 S Ct 1908; 63 L Ed 2d 420 (1981), and *Paul v Davis,* 424 US 693; 96 S Ct 1155; 47 L Ed 2d 405 (1976).

Municipalities (local governments) such as defendant City can be sued under 42 USC 1983. *Monell v Dep't of Social Services of City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978); *Owen v City of Independence,* 445 US 622; 100 S Ct 1398; 63 L Ed 2d 673 (1980); *Polk County v Dodson,* 454 US 312; 102 S Ct 445; 70 L Ed 2d 509 (1981). See also *City of Oklahoma City v Tuttle,* 471 US —; 105 S Ct 2427; 85 L Ed 2d 791 (1985). Under *Monell, supra,* a municipality is a person. However, a "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under

§ 1983 on a *respondeat superior* theory". *Monell,* 436 US 691. As stated by the *Monell* Court:

"We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 US 694.

Under *Polk, supra,* 454 US 326, the United States Supreme Court indicated that a local government's liability under 42 USC 1983 must be based on an unconstitutional official policy or custom. (Was the deprivation caused by any constitutionally forbidden rule or procedure?) Furthermore, "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government". *Polk,* 454 US 326, citing *Monell, supra.* See also *City of Oklahoma City v Tuttle, supra,* part III, plurality opinion written by Justice Reinquist, joined by Chief Justice Burger and Justices White and O'Conner:

"[T]he *Monell* Court held that only deprivations visited pursuant to municipal 'custom' or 'policy' could lead to municipal liability. This language tracks the language of the statute; it also provides a fault-based analysis for imposing municipal liability." 105 S Ct 2433-2434; 85 L Ed 2d 801. (Footnote omitted.)

In *City of Oklahoma City v Tuttle, supra,* an officer on Oklahoma City's police force shot and killed Rose Marie Tuttle's husband outside a bar in which a robbery had been reported in progress. Mrs. Tuttle brought suit against the officer and the city under 42 USC 1983 alleging that their actions

had deprived her husband of his federal constitutional rights under the Fourteenth and "presumably" under the Fourth Amendments (due process of law and the "right to be free from the use of excessive force in his apprehension"). 105 S Ct 2433; 85 L Ed 2d 800.

The theory of municipal liability advanced at trial was that the officer's act arose from inadequate police training. A jury verdict was returned in favor of the police officer but against the defendant City in the amount of $1,500,000. The verdict was affirmed on appeal to the Tenth Circuit. 728 F2d 456 (1984). The United States Supreme Court granted certiorari because the Tenth Circuit's holding that proof of a single incident of unconstitutional activity by a police officer could suffice to establish municipal liability conflicted with other Circuit Court of Appeals decisions.

At trial, Mrs. Tuttle did not claim that the defendant city had a "custom" or "policy" of authorizing its officers "to use excessive force in the apprehension of suspected criminals, and the jury was not instructed on that theory of municipal liability". 105 S Ct 2434; 85 L Ed 2d 802. The theory of liability advanced at trial "was that the 'policy' in question was the city's policy of training and supervising police officers, and that this 'policy' resulted in inadequate training, and the constitutional violations alleged". The trial court's instruction allowed the jury to "'infer,' from 'a single, unusually excessive use of force * * * that it was attributable to inadequate training or supervision amounting to "deliberate indifference" or "gross negligence" on the part of the officials in charge'". 105 S Ct 2434, 2435; 85 L Ed 2d 802. (Citation omitted.)

Justice Reinquist wrote:

"We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers. But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker. The foregoing discussion of the origins of *Monell's* 'policy or custom' requirement should make clear that, at the least, that requiremtn was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers. Presumably, here the jury could draw the stated inference even in the face of uncontradicted evidence that the municipality scrutinized each police applicant and met the highest training standards imaginable. To impose liability under those circumstances would be to impose it simply because the municipality hired one 'bad apple.'

"The fact that in this case respondent introduced independent evidence of inadequate training makes no difference, because the instruction allowed the jury to impose liability even if it did not believe respondent's expert at all. Nor can we read this charge 'as a whole' to avoid the difficulty. There is nothing elsewhere in this charge that would detract from the jury's perception that it could impose liability based solely on this single incident." 105 S Ct 2435; 85 L Ed 2d 802-803.

When explaining the difference between the policy in *Monell,* and that in the *Tuttle* case, Justice Reinquist wrote:

"The 'policy' of the New York Department of Social Services that was challenged in *Monell* was a policy that by its terms compelled pregnant employees to take mandatory leaves of absence before such leaves were required for medical reasons; this policy in and of itself violated the constitutional rights of pregnant employees by reason of our decision in *Cleveland Board of Education v LaFleur,* 414 US 632, 94 S Ct 791, 39 L Ed 2d 52 (1974). Obviously, it requires only one application of a

policy such as this to satisfy fully *Monell's* requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy.

"Here, however, the 'policy' that respondent seeks to rely upon is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.* To establish the constitutional violation in *Monell* no evidence was needed other than a statemnt of the policy by the municipal corporation, and its exercise; but the type of 'policy' upon which respondent relies, and its causal relation to the alleged constitutional violation, are not susceptible to such easy proof. In the first place, the word 'policy' generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training', unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate. And in the second place, some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official; for example, Rotramel would never have killed Tuttle if Oklahoma City did not have a 'policy' of establishing a police force. But *Monell* must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was 'caused' by the municipal 'policy.' At the very least there must be an affirmative link between the policy and particular constitutional violation alleged.

"Here the instructions allowed the jury to infer a thoroughly nebulous 'policy' of 'inadequate training' on the part of the municipal corporation from the single incident described earlier in this opinion, and at the same time sanctioned the inference that the 'policy' was

the cause of the incident. Such an approach provides a means for circumventing *Monell's* limitations altogether. *Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.* Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. *But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality* and the causal connection between the 'policy' and the constitutional deprivation." (Emphasis added, footnotes omitted.) 105 S Ct 2435-2436; 85 L Ed 2d 803-804.

Concurring in part and concurring in the judgment reversing the Tenth Circuit, Justice Brennan, joined by Justices Marshall and Blackmun, wrote that the plurality opinion complicated the task of defining the full contours of municipal liability and he suggested a simpler explanation. Justice Brennan concluded that allowing the jury to infer the existence of a city policy from a single incident of police misconduct of one low level officer not authorized to make city policy and to hold the City liable on the basis of that policy would amount to permitting liability based upon the theory of *respondeat superior* which was rejected by the *Monell* Court:

"A single police officer may grossly, outrageously, and recklessly misbehave in the course of a single incident. Such misbehavior may in a given case be fairly attributable to various municipal policies or customs, either those that authorized the police officer so to act or those that did not authorize but nonetheless were the 'moving force,' *Polk County v Dodson*, 454 US 312, 326; 102 S Ct 445, 454; 70 L Ed 2d 509 (1981), or cause of the violation. In such a case, the city would be at fault for the

constitutional violation. Yet it is equally likely that the misbehavior was attributable to numerous other factors for which the city may not be responsible; the police officer's own unbalanced mental state is the most obvious example. *Cf. Brandon v Holt,* 469 US —, —; 105 S Ct 873; 85 L Ed 2d 878 (1985). In such a case, the city itself may well not bear any part of the fault for the incident; there may have been nothing that the city could have done to avoid it. Thus, without some evidence of municipal policy or custom independent of the police officer's misconduct, there is no way of knowing whether the city is at fault." 105 S Ct 2440; 85 L Ed 2d 809.

The plaintiffs herein first attempted to show that the City adopted a policy, custom or practice of tolerating firearm abuse or misuse and verbal horseplay of a racial nature which proximately caused the shooting. "[T]he plaintiff must show an affirmative link between the misconduct and the adoption of any plan or policy, showing defendant's authorization or approval of such conduct." *Moore, supra,* p 499; *Rushing, supra.* The alleged misconduct here was the reckless shooting of Napier (due process violation) by an off-duty police officer.

We first point out that the alleged custom, plan, or policy of toleration of firearm misuse or abuse and racially derogatory language which plaintiffs claimed to have proximately caused the shooting, if the policy existed, is not an unconstitutional policy in and of itself. By comparison, a policy of tolerating illegal searches and seizures would be unconstitutional under the Fourteenth and Fourth Amendments. The United States Constitution does not prohibit the use of racial epithets, although such use is objectionable. Nor does the Constitution prohibit the misuse of firearms, such as quick draw practicing by police officers in front of mir-

rors. Under *Polk, supra,* we believe that the evidence presented at trial did not establish a policy, custom, or plan that was unconstitutional, nor a moving force of the constitutional violation alleged by plaintiffs (deprivation of Napier's right to due process). In fact, our review of the evidence at trial reveals that, at most, the evidence established a custom of tolerating racially derogatory language or verbal horseplay between police officers. We do point out that the plurality opinion in *City of Oklahoma City v Tuttle* does not limit liability under § 1983 to "unconstitutional policies". A municipality may still be held liable for a "constitutional" policy, but more than proof of a single incident is necessary. See 105 S Ct 2436; 85 L Ed 2d 804.

The evidence presented came first from Napier, who testified that officers and supervisors alike called each other racially or ethnically derogatory names. Other officers testified that they had heard such language used in the presence of supervisors and that Chief Kertuu was aware of it. None of the officers, however, testified that they felt any personal offense at the use of the language.

Under *Monell* and its progeny, it is our opinion that such evidence did not at all establish an affirmative link between the shooting of Napier and the policy or custom of encouraging verbal horseplay of a racial nature. There was no causal relationship or connection between the incident which occurred and the defendant City's policy or custom. See 105 S Ct 2436; 85 L Ed 2d 804. Although the policy or custom relied upon by plaintiffs was not in itself unconstitutional, under the circumstances presented in this case the proofs failed to establsih the requisite fault on the part of defendant City.

Evidence of an affirmative link between Jacobs's

unconstitutional conduct and the defendant City's policy was insufficient as a matter of law.

We also find that there was insufficient evidence as a matter of law on an alleged policy or custom established by supervisory indifference, toleration or acquiescense in the misuse of firearms. "Official policy may be established by the omissions of supervisory officials as well as from their affirmative acts." *Avery v Burke County,* 660 F2d 111, 114 (CA 4, 1981). Absent evidence of supervisory indifference such as acquiescing in a prior pattern of conduct, isolated incidents or a single incident are normally insufficient to establish inaction by supervisors for purposes of § 1983 liability. Inaction can take the form of failure to promulage rules and regulations. *Turpin v Mailet,* 619 F2d 196 (CA 2, 1980), *cert den,* 449 US 1016; 101 S Ct 577; 66 L Ed 2d 475 (1980); *Woodhous v Virginia,* 487 F2d 889 (CA 4, 1973); *Avery, supra.*

The police chief testified that the official policy regarding the use of firearms is that an officer is not to use fatal force except when the officer's or another person's life is in jeopardy. Further, departmental rules prohibit officers from unholstering their guns inside the station except for inspections or cleaning. All of the defendant officers admitted that they violated departmental rules and regulations by unholstering their weapons on the night of the shooting.

Napier testified, however, that the rules were routinely violated. He testified to incidents where officers allegedly practiced drawing their guns in front of mirrors in the station. Jacobs testified at his civil service hearing that gunplay was common and that supervisors, as well as officers, engaged in it. Other officers also testified to having either seen or engaged in gunplay in violation of the rules. Napier did not report the incidents he had ob-

served to any supervisors because of the unwritten rule against reporting fellow officers' misconduct. He further testified to having observed a supervisor stop another officer from engaging in gunplay. Chief Kertuu testified to being unaware of any firearm abuse. The only other evidence presented on supervisory knowledge of gunplay was Napier's testimony that a specific lieutenant quick-drew his gun once and this occurred after Napier's shooting. For the most part, the testimony at trial did establish that when guns were used improperly, the incident was investigated, officers were disciplined and one officer was forced to retire. Most of the incidents involving discharges of guns were totally unrelated to horseplay or rule violations. We believe that the evidence presented at trial was insufficient as a matter of law to establish an official policy of toleration of firearm abuse via supervisory inaction, knowledge, or a failure to make rules.

It is also our opinion that the evidence presented at trial was insufficient as a matter of law to establish a policy or custom of inadequate police training and supervision in the use of firearms, or retraining in the use of firearms. Proof of a single incident of misconduct, as was shown here, is not enough. See *City of Oklahoma City v Tuttle, supra,* plurality and concurring opinions. Furthermore, under the "deliberate indifference" standard used by our courts to evaluate claims of municipal liability based upon allegations of inadequate training in the use of weapons and supervision of police officers, see *Zmija v Baron,* 119 Mich App 524; 326 NW2d 908 (1982); *Cook v Detroit,* 125 Mich App 724; 337 NW2d 277 (1983); and *Moore, supra,* plaintiffs' proofs were equally as deficient.

The evidence did not establish that the training and supervision of the Highland Park police offi-

cers was so inadequate that the resulting misconduct was probable. No amount of training or retraining would have made a significant difference at all in the predictability of Jacobs's behavior. Furthermore, there was no evidence of any persistent failure to discipline officers for misconduct prior to the incident. See *Taylor v Canton, Ohio Police Dep't,* 544 F Supp 783, 792 (ND Ohio, 1982).

We note that, because of the result reached, it is unnecessary for us to address the evidentiary claim raised by defendant City with respect to Jacobs's liability. Jacobs is not a party to this appeal, and as defendant correctly asserts, municipal liability cannot be based upon a *respondeat superior* theory. We have also reviewed defendant's remaining claims and find them to be without merit. The exclusive remedy provision of the Worker's Disability Compenstation Act, MCL 418.131; MSA 17.237(131), did not bar plaintiffs' claim. Civil rights claims under our state's statutes are not barred by that provision. See *Beauregard v Clarke-Gravely Corp,* 131 Mich App 559; 346 NW2d 48 (1982). Michigan Handicappers Civil Rights Act, MCL 37 1101 *et seq.,* MSA 3.550(101) *et seq.;* Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.;* See also *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308; 362 NW2d 642 (1984). Similarly, state courts may not discriminate against federal causes of action and the defense of the exclusivity provision would nullify the right to proceed with a federal remedy for alleged constitutional rights violations.

Reversed an remanded for entry of judgment for defendant City. We retain no further jurisdiction.