## BOGGERTY v WILSON

Docket No. 82510. Submitted January 14, 1986, at Detroit. Decided June 2, 1987. Leave to appeal applied for.

Major F. Boggerty and Aden Boggerty brought an action in the Wayne Circuit Court against Earnestine Wilson, Jackie Veasley, Cynthia Martin, David Murray, Warren Coleman and the City of Detroit. The action arose out of an incident which occurred at the 11th Precinct station following the arrest of Major Boggerty (hereafter plaintiff). Plaintiff received injuries while being taken from his cell to make a phone call. The jury rendered a verdict of no cause of action as to the individual defendants, Detroit police officers, on plaintiffs' claims of false imprisonment, assault and battery, negligence and denial of plaintiff's civil rights. The jury also rendered a verdict against the city for denial of plaintiff's civil rights. The trial court, Thomas J. Foley, J., entered judgments to that effect. The city appeals from the judgment against it and the plaintiffs cross-appeal from the judgment in favor of the individual defendants.

The Court of Appeals *held:*

1. Plaintiffs presented insufficient evidence to sustain the verdict against the city. Plaintiffs clearly presented no facts in regard to certain practices of the police officers that tended to show conduct implementing or executing a policy statement, ordinance, regulation or decision officially adopted and promulgated by the city. There must be an affirmative link between the custom at issue (especially where, as here, the custom itself does not establish wrongdoing) and the constitutional deprivation alleged to cast blame on the city. Here, the affirmative link is missing.

2. The city's failure to measure up to published training

REFERENCES

Am Jur 2d, Appeal and Error § 605.

Am Jur 2d, Negligence §§ 271, 272.

Am Jur 2d, Penal and Correctional Institutions §§ 17 *et seq.*

Am Jur 2d, Trial § 267.

Supreme Court's construction of Civil Rights Act of 1871 (42 USCS § 1983) providing private right of action for violation of federal rights. 43 L Ed 2d 833.

Civil liability of sheriff or other officer charged with keeping jail or prison for death or injury of prisoner. 14 ALR2d 353.

standards thought by plaintiffs' expert to be superior to the standards of Michigan law and its failure to follow through on its own written standards does not make a prima facie case. Plaintiffs' evidence can establish no more than negligence on the city's part. Such a quantum of fault is insufficient.

3. The trial court did not err by refusing to permit plaintiffs to object during trial to the introduction of the video deposition of plaintiffs' witness Dr. Mitchell Pollak. Plaintiffs' objection came too late and was waived.

4. Defense counsel's comments on the fact that the pleadings had been amended were improper but were isolated and, as such, innocuous and do not require reversal.

5. Plaintiffs properly pled a violation of Department of Corrections rules and regulations and the trial court erred in ruling to the contrary. However, the Court of Appeals believes that the admission of the evidence regarding these violations would have been otherwise denied, and, thus, reversal is not required.

6. The trial court did not err in refusing to permit plaintiffs' expert witness Donley to offer an opinion on whether defendant Murray had acted properly in his handling of plaintiff. Such opinion was beyond the areas of the expert's expertise.

7. The trial court correctly denied plaintiffs' request for a default judgment, under GCR 1963, 506.6(2), and for a jury instruction, SJI2d 6.01, based on the absence of defendant Murray from the trial since the record contained no written order compelling Murray's presence at trial.

The judgment of no cause of action against the individual defendants is affirmed and the judgment in favor of plaintiffs against the city is reversed.

HOOD, P.J., dissented from those portions of the majority opinion which reverse the judgment against the city and which approve the trial court's ruling as to the absence of defendant Murray. It is his belief that: (1) The plaintiffs' evidence was sufficient to support a jury verdict against the city; (2) The expert testimony was sufficient to establish a municipal policy upon which to render the city liable; (3) The plaintiffs did establish an affirmative link between the city's policies and the constitutional deprivation; and (4) Plaintiffs were at least entitled to an instruction as to Murray's absence, thus, the trial court erred in failing to give SJI2d 6.01 and such error cannot be viewed as harmless error.

1. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — MUNICIPAL LIABILITY — UNITED STATES CODE.

A plaintiff may establish municipal liability for deprivations of a

federal constitutionally protected interest if he can show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation; the plaintiff in an action under 42 USC 1983 has to present proof of fault beyond mere negligence on the part of the municipality in establishing the policy or tolerating the custom (42 USC 1983).

2. MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — MUNICIPAL LIABILITY.

There must be an affirmative link between an established municipal custom at issue and the constitutional deprivation alleged to establish municipal liability for deprivation of a constitutionally protected interest; the affirmative link requirement means there must be some knowledge or an awareness, actual or imputed, of the custom's consequences showing the municipality's approval, acquiescence or encouragement of the unconstitutional violation; the quantum of evidence needed to establish such an affirmative link is greater where the particular custom that plaintiffs claim resulted in their injuries involves a course of municipal inaction that is a good deal removed from the constitutional deprivation alleged.

3. EVIDENCE — DEPOSITIONS — PRESERVING QUESTION — COURT RULES.

Objections to a deposition sought to be introduced at trial are waived unless the objecting party presents the deposition, along with his objections, to the trial court ten days before trial; the availability of a written transcript of the deposition does not negate such a waiver (MCR 2.315[F]).

4. TRIAL — PLEADING — COMMENTS ON PLEADINGS.

Counsel should be afforded a summational free rein in comparing pleadings and testimony before the trier of fact; however, comments on the mere fact that the pleadings have been amended, aside from the evidentiary facts involved, is improper.

5. EVIDENCE — NEGLIGENCE — ADMINISTRATIVE RULES AND REGULATIONS.

Violation of administrative rules and regulations is evidence which may be submitted for jury determination when it is properly pled; before evidence of a violation is admitted at trial, the trial court must consider whether the harm suffered was that which the rule or regulation was designed to prevent.

6. APPEAL — EVIDENCE — PLEADING.

The Court of Appeals may decline to reverse based on a trial

court's erroneous ruling that the violation of administrative rules and regulations was not properly pled where the admission of the evidence regarding the violations would have been otherwise denied.

7. COURTS — ORDERS.

Courts speak through their written orders, not their oral statements.

*Fried & Saperstein, P.C.* (by *Melvyn D. Saperstein, James C. Howarth* and *Juan A. Mateo*), for plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Matthew A. Seward* and *Rosalind H. Rochkind*), for the individual defendants.

*Laurel McGiffert,* Assistant Corporation Counsel, for the City of Detroit.

Before: HOOD, P.J., and J. H. GILLIS and J. M. BATZER,* JJ.

J. M. BATZER, J. Following a jury trial, defendant City of Detroit was found liable under 42 USC 1983 for violating the constitutional rights of plaintiff Major Boggerty (hereafter plaintiff). The city appeals as of right from the judgment to that effect.

Plaintiffs have cross-appealed from the judgment of no cause of action in favor of the individual defendants, police officers for the City of Detroit.

I

The instant action arises out of the arrest of plaintiff in the City of Detroit on October 24, 1979. Plaintiff was arrested at the time of the arrest of his brother, Robert, a felonious assault suspect and

* Circuit judge, sitting on the Court of Appeals by assignment.

passenger in plaintiff's car. Plaintiff testified that the officers informed him at the time of Robert's arrest that they would have to take him down to the police station. He testified that there were three unopened fifths of liquor in the rear passenger area of his car.

Plaintiff was taken by two policemen to the 11th Precinct. Once at the station, plaintiff's belongings were removed and his watchband was broken in the process. According to plaintiff, he was functioning normally during the booking procedure. After plaintiff's belongings were removed, he was taken by an officer to a door where he was met by Officer David Murray. Murray escorted plaintiff to a cell where plaintiff remained for approximately one hour.

Plaintiff testified that he repeatedly requested to be let out of his cell to make a phone call but that Murray at first ignored his requests. After several minutes, Murray responded and took plaintiff from his cell to a phone in the fingerprint room. Plaintiff called the home of his friend, James Carreker, and informed Carreker's wife of his arrest. After the phone call, plaintiff was taken to a table and fingerprinted.

According to plaintiff, after he wiped his hands, he was approached by Murray and given a blank sheet of paper. Plaintiff testified that Murray told him: "You sign this sheet of paper and pay $100 and you can go." At that time plaintiff heard his brother, Robert, detained in a precinct cell, yell to Murray: "Bring your red ass in here if you want to fight." Murray then allegedly grabbed plaintiff by his shirt collar and kneed him in the upper left side of his leg, near his groin.

According to plaintiff, he fell to the floor and Murray continued kicking him in the lower back. Three police officers joined Murray and grabbed

plaintiff "spread eagle" on the floor. The officers hit plaintiff a few more times in the abdominal area. Because his leg had been previously broken and he did not want to reinjure it, plaintiff appealed to a black officer to stop the beating, but the officer responded: "If your leg is broken, you should have a cast on it." When plaintiff looked up, he saw a white officer standing in the doorway. The officers stopped assaulting plaintiff and ordered him onto a bench. He remained on the bench until his wife and his friend, James Carreker, arrived. Plaintiff's wife paid his bond and, with the help of Carreker, drove plaintiff to Sinai Hospital. Although a Detroit EMS unit had been called to transport plaintiff to Detroit Receiving Hospital for medical attention, plaintiff refused to go because Sinai was closer to his home. Plaintiff testified that sometime after the incident he learned that his wife had poured him a tumbler full of whiskey which he drank in the car on the way to the hospital. Plaintiff remained in the hospital until December 24, 1979. He continues to suffer pain in his left hip and leg.

Plaintiff's wife, James Carreker and Ruth Gray Chambers corroborated plaintiff's account of events occurring before and after plaintiff's arrest and subsequent to his injury at the station.

A conflicting account of events was presented by the Detroit police officers. The Detroit police received a report at approximately 4:00 P.M. of a felonious assault. A woman at the location of the alleged assault described the assailants as driving a blue car and heading in a northerly direction. Defendant Wilson and her partner left the scene in search of the car but were unable to locate it and returned to the scene of the crime. As they were speaking with other officers back at the scene of the assault, a blue car turned onto that street

and stopped about mid-block. The woman identified the car and Wilson approached plaintiff who was the driver.

According to Wilson, plaintiff was holding a small plastic cup, which she assumed contained alcohol. She asked plaintiff to step out of the vehicle. She also saw a fifth of Canadian Club sitting alongside plaintiff. She recalled that plaintiff was reluctant to comply and started "mumbling and cussing." After Robert Boggerty was arrested, Wilson placed plaintiff under arrest for having open alcohol in his car and disturbing the peace. Wilson accompanied plaintiff to the station where, pursuant to Lt. Warren Coleman's directions, the charge was changed to driving under the influence of liquor. Plaintiff refused a Breathalyzer test. Wilson testified that the DUIL charges were eventually dropped due to insufficient evidence. The charges regarding plaintiff's failure to take a Breathalyzer test were dropped upon a referee's finding that the reason for plaintiff's arrest was belligerence.

Plaintiffs called Lt. Warren Coleman as an adverse witness. Coleman testified that he thought plaintiff was "quite intoxicated" when he was brought to the station. Coleman believed that it was proper to let plaintiff out of his cell to make a call assuming that the doorman, Murray, thought plaintiff was capable of making the call. Coleman testified that on the date of the offense Murray was acting as doorman at the precinct. Coleman did not see the injury occur, but entered the fingerprinting room within seconds after hearing the sound of someone or something falling. When he entered, he saw plaintiff and Murray lying on the floor. He denied that he saw anyone assault plaintiff.

Two physicians, McCollough and Pollak, testified

concerning plaintiff's injuries. Both testified that plaintiff suffered a fractured femur and that it was unusual for a man of plaintiff's age to have sustained such a fracture as the result of a fall because the injury generally required a higher degree of external force. Pollak read an excerpt from the emergency room admission records indicating that it was difficult to examine plaintiff because plaintiff was intoxicated with alcohol.

Plaintiffs additionally introduced the testimony of two experts in the area of hiring and training police officers. Both experts testified on the basis of standards published by various criminal justice associations.

Dr. Beckman testified that, based upon his review of Murray's deposition, Murray had had no special training for his position as doorman and accordingly had not been properly trained. He also opined that neither Lt. Coleman nor Officer Wilson had been properly trained. When questioned on the overall training of doormen provided by the City of Detroit between the years 1970 and 1979, Beckman responded that the training methods "did not and never have" met the standards on which he relied. Beckman acknowledged on cross-examination that Detroit police officers go through all state-mandated training and that the training by the City of Detroit met all state standards.

Mr. Donley concurred in Beckman's assessments. Like Beckman, Donley testified that Murray had not been properly trained as a doorman. Donley asserted that in 1978 and 1979 the City of Detroit had a "well written program" for training doormen, but that the program had not been effectively carried out. Finally, Donley explained that a visibly intoxicated prisoner should not be removed from his cell to make a phone call for a number of reasons, including possible injury to the

intoxicated person. Instead, an intoxicated person should be permitted his phone call prior to being taken to his cell.

' Plaintiff's case was submitted to the jury on a special verdict form which charged the individual defendants, variously, with false imprisonment, assault and battery, negligence and denial of plaintiff's civil rights. The case against defendant City of Detroit was premised on the city's denial of plaintiff's civil rights by improper training, or by a "policy, custom or procedure" which violated plaintiff's civil rights. The jury rendered a verdict of no cause of action as to the individual defendants on all counts and rendered a verdict against the city in the amount of $550,000 for denial of plaintiff's civil rights.

We first address defendant-appellant's claim of error.

II

Defendant City of Detroit claims that plaintiffs presented insufficient evidence of a denial of civil rights to sustain the jury verdict.

In reviewing the city's claim, this Court must view the evidence in a light most favorable to plaintiffs and give plaintiffs the benefit of every reasonable inference that can be drawn from the evidence. If, after viewing the evidence in this manner, reasonable men could differ, the question was properly left to the jury. *Napier v Jacobs,* 145 Mich App 285, 290-291; 377 NW2d 879 (1985).

The special verdict makes clear that the jury premised the city's liability on the city's failure to properly train its doormen and the resultant negligent removal of plaintiff from his cell. When we view the evidence in a light most favorable to

plaintiffs, we conclude that plaintiffs presented insufficient evidence to sustain this verdict.

A plaintiff may establish municipal liability for deprivations of a federal constitutionally protected interest if he can show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation. *Monell v Dep't of Social Services,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). *Monell's* proscription of vicarious liability on a respondeat superior theory makes plain that the " 'policy or custom' requirement . . . was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Oklahoma City v Tuttle,* 471 US 808, 821; 105 S Ct 2427; 85 L Ed 2d 791 (1985) (plurality opinion); *Id.,* 471 US 828 (Brennan, J., concurring).

Additionally, it now appears that in § 1983 actions the plaintiff has to present proof of fault beyond mere negligence on the part of the city in establishing the policy or tolerating the custom. See *Daniels v Williams,* 474 US 327; 106 S Ct 662; 88 L Ed 2d 662 (1986) (prison official's negligent conduct causing unintended loss of or injury to life, liberty or property does not constitute a violation of the Due Process Clause of the Fourteenth Amendment); *Davidson v Cannon,* 474 US —; 106 S Ct 668; 88 L Ed 2d 677 (1986) (same).

Plaintiffs clearly presented no facts that tended to show conduct implementing or executing a policy statement, ordinance, regulation or decision officially adopted and promulgated by the city. *Monell, supra,* 436 US 690. In fact, Donley testified that the city had a well-written program for training doormen.

However, governmental *customs,* in contrast to official policies, do not receive "formal approval

through [the local government's] official decision-making channels." *Monell,* 436 US 691. Rather, they are simply " 'persistent and widespread . . . practices of . . . officials.' " *Id.*

Even if there were testimony of certain practices of officers at the 11th Precinct from which it could reasonably be inferred that there existed a custom of training standards that failed to meet published standards and which were not in accord with the city's own program, such a "custom" does not, in itself, establish a prima facie case. There must be an "affirmative link" between the custom at issue (especially where, as here, the "custom" itself does not establish wrongdoing) and the constitutional deprivation alleged to cast blame on the city. *Tuttle,* 471 US 823. Federal circuit courts have taken *Tuttle's* "affirmative link" requirement to mean that there must be some knowledge or an awareness, actual or imputed, of the custom's consequences showing the municipality's approval, acquiescence or encouragement of the unconstitutional violation. *Hamilton v Rodgers,* 791 F2d 439 (CA 5, 1986); *Jones v Chicago,* 787 F2d 200 (CA 7, 1986); see *Hays v Jefferson Co, Kentucky,* 668 F2d 869, 873-874 (CA 6, 1982), cert den 459 US 833; 103 S Ct 75; 74 L Ed 2d 73 (1982).

Further, the quantum of evidence needed to establish the "affirmative link" is considerably greater where, as here, the particular custom that plaintiffs claim resulted in their injuries involves a course of municipal inaction that is a good deal removed from the constitutional deprivation alleged. *Oklahoma City v Tuttle, supra; Napier v Jacobs, supra,* 145 Mich App 298. We find that the *Tuttle* affirmative link is missing in the instant case.

In the case sub judice, plaintiffs' *own* expert testified that the training of Detroit police officers

met all state standards. Plaintiffs presented no evidence that the standards their experts relied on were accepted generally by municipal departments or were of such a nature that the failure to live up to them was substantially likely to result in injury. Plaintiffs presented no evidence of similar incidents at other precinct lockups.[1] The city's mere failure to measure up to published training standards thought by plaintiffs' expert to be superior to the standards of Michigan law and its failure to follow through on its own written standards does not make a prima facie case. Plaintiffs' evidence, when viewed most expansively, can establish no more than negligence on the city's part. Such a quantum of fault is insufficient.

In *Daniels v Williams, supra,* the plaintiff sought damages in a § 1983 action for injuries allegedly sustained by a jail inmate when he slipped on a pillow left on the jail stairs by a guard. In affirming summary judgment for the defendant, the United States Supreme Court stated:

> Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.
>
> * * *
>
> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. The enactment of tort claim statutes, for example, reflects the view that injuries caused by such negligence should generally be redressed. It is no reflection on either

---

[1] In appropriate circumstances, a single decision by a municipal policymaker may result in municipal liability under § 1983. *Pembaur v Cincinnati,* 475 US —; 106 S Ct 1292; 89 L Ed 2d 452 (1986).

the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. [106 S Ct 666; 88 L Ed 2d 669.]

Having found that plaintiffs presented insufficient evidence to recover for violation of plaintiff's federal constitutional rights, we find it unnecessary to address defendant-appellant's remaining claims of error. We move to plaintiffs' claims on cross-appeal.

III

Plaintiffs contend that the trial court erred by refusing to permit plaintiffs to make objections during trial to the introduction of the video deposition of plaintiffs' witness, Dr. Mitchell Pollak. Plaintiffs sought to object to Pollak's reading from his discharge summary a statement that plaintiff was admitted after being involved in an altercation in which he tripped on his leg and fell down.

Plaintiffs' objection came too late. The applicable court rule, GCR 1963, 315.6(2), now MCR 2.315(F), provides that objections are waived unless a party presents the deposition, along with his objections, to the trial court ten days before trial. We reject plaintiffs' argument that the availability of a written transcript negates the waiver, which was couched in mandatory terms in the court rule. The availability of the written transcript has little or no effect in avoiding the delay caused by objections to a video deposition at or near the time of trial. *Sponenburgh v Wayne Co*, 106 Mich App 628; 308 NW2d 589 (1981), relied upon by plaintiffs, is inapposite. Moreover, as in *Sponenburgh*, reversal is not required here since plaintiffs were not denied a fair trial by admission of the testi-

mony, which supported at least one of plaintiffs' alternative theories of liability against the city.

IV

Plaintiffs complain that they were prejudiced when defense counsel commented on and cross-examined plaintiff concerning the factual inconsistencies between his various pleadings, the amendments thereof and his trial testimony. In a similar vein, plaintiffs allege that they are entitled to a new trial because defense counsel for the individual defendants improperly commented on the history of the pleadings, noting the number of amendments and the addition of claims.

With regard to the former contention, "counsel should be afforded a summational free rein in comparing" pleadings and testimony before the trier of fact. *Vachon v Todorovich,* 356 Mich 182, 187; 97 NW2d 122 (1959). Such a rule discourages deceptive pleading and "its observance affords a time-tried and altogether valuable means of getting at the truth where facts are disputed." *Id.,* pp 187-188. See also *Beals v Walker,* 98 Mich App 214; 296 NW2d 828 (1980), rev'd on other grounds 416 Mich 469; 331 NW2d 700 (1982).

However, comment on the mere fact of the amendment of pleadings is distinguishable. The rules provide for liberal pleading and amendment. Therefore, comment on such practice, aside from the evidentiary facts involved, is improper. However, in the instant case, those comments were isolated, and, as such, innocuous. We decline to reverse.

V

Plaintiffs assert two errors relating to their

claim that the individual defendants Coleman and Murray were negligent in their care of plaintiff, a prisoner in a local lockup.

First, plaintiffs argue that they were entitled to present evidence of, and entitled to a jury instruction on, Department of Corrections rules and regulations, promulgated pursuant to MCL 791.262; MSA 28.2322, dealing with the supervision and administration of local penal institutions. Specifically, plaintiffs wished to present expert testimony relating application of the administrative rules to the conduct of the individual defendants and requested an instruction that violation of the rules was evidence of negligence. The trail court denied these requests on the ground that violation of the administrative rules had not been properly pled.

Violation of administrative rules and regulations is evidence of negligence, and, as such, when a violation is properly pled, the violation is properly submitted for jury determination. *Beals v Walker,* 416 Mich 469, 481; 331 NW2d 700 (1982). Plaintiffs alleged in their complaint that the individual defendants had a "duty to know and follow administrative regulations."

We believe that violation of the rules was properly pled and that the trial court erred in ruling to the contrary. However, we believe that the admission of evidence regarding these violations would have been otherwise denied, and, therefore, we decline to reverse. *Queen Ins Co v Hammond,* 374 Mich 655, 658-659; 132 NW2d 792 (1965). Before evidence of a violation of an administrative rule or regulation is admitted at trial, the trial court must consider whether the harm suffered was that which the rule or regulation was designed to prevent. *Beals v Walker,* 416 Mich 482. The regulations presented by plaintiffs at trial dealt with specifications for detoxification cells, holding cells and segregation cells. These rules deal with the

safety of prisoners within the various cells. They serve to protect prisoners from assault within the cells. They are not intended to prevent injuries to persons in other areas of a local lockup building.[2]

Plaintiffs contend that the trial court erred by refusing to permit their expert witness Donley to offer an opinion on whether defendant Murray had acted properly in his handling of plaintiff. In each instance in which the opinions were sought, defense counsel objected that the questions embraced the ultimate issue of fact. The trial court sustained the objection of defense counsel, reasoning that the opinions were beyond the areas of the expert's expertise. We agree with the trial court.

Donley was qualified as an expert in the area of police hiring and training. As such, we find no abuse of discretion in the court's exclusion of his opinion testimony concerning whether individual police officers breached their standard of care.

VI

Finally, plaintiffs claim that the absence of defendant David Murray from the trial entitled them to a default judgment, GCR 1963, 506.6(2), or, at least, entitled them to an instruction that Murray's absence permitted the jury an inference that his testimony would have been adverse to defendants' cause, SJI2d 6.01. Plaintiffs premised their request for default on the alleged previous oral command of Judge Dunn, at an April, 1984, hear-

[2] We note that subsequent to *Young v Ann Arbor,* 119 Mich App 512, 517; 326 NW2d 547 (1982), *(On Rehearing),* 125 Mich App 459; 336 NW2d 24 (1983), remanded on other grounds, 422 Mich 901 (1985), subsequent history at *Young v Ann Arbor (On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), in which this Court held that Department of Corrections rules dealing with "local jails" included city and county jails, as well as local lockups, the Legislature amended MCL 791.262; MSA 28.2322 to specifically limit Department of Corrections administrative regulations to jails under the jurisdiction of the county sheriffs.

ing, that Murray appear at trial.[3] The trial court denied both the default judgment and plaintiffs' request for SJI2d 6.01 on the ground that the record contained no written order compelling Murray's presence at trial.

Courts speak through their written orders, not their oral statements. *Hosner v Brown,* 40 Mich App 515; 199 NW2d 295 (1972). The record contains no written order of the trial court, GCR 1963, 506.1, or subpoena,[4] GCR 1963, 506.4, compelling Murray's presence. Accordingly, we agree with the trial court that neither the default sanctions of GCR 1963, 506.6(2) nor the jury instruction, SJI2d 6.01, has application here. *Cavanaugh v Cardamone,* 147 Mich App 159; 383 NW2d 601 (1985). See also *Kaniewski v Emmerson,* 44 Mich App 737, 738-739; 205 NW2d 812 (1973).

The trial court's judgment in favor of plaintiffs against the City of Detroit is reversed. The trial court's judgment of no cause of action against the individual defendants is affirmed.

J. H. GILLIS, J., concurred.

HOOD, P.J. *(dissenting in part).* I must respectfully dissent from those portions of the majority decision which vacate the jury's verdict against the City of Detroit and which approve the trial court's ruling as to the absence of defendant David Murray.

First, I cannot agree with the majority's conclu-

---

[3] The stenographer's notes from that hearing were never located.

[4] In a posttrial motion for default judgment below and on appeal, plaintiffs present a subpoena served on counsel for the individual defendants compelling Murray's attendance on January 9, 1984, a trial date some six months prior to the actual trial of this matter. That subpoena is not a part of the lower court record. More importantly, absent a record of service for the ultimate June trial date, we decline to give this nonrecord order credence.

sion that plaintiffs' evidence was insufficient to support a jury verdict.

In *Napier v Jacobs,* 145 Mich App 285, 291; 377 NW2d 879 (1985), this Court stated that the standard for review of a sufficiency of the evidence claim in a civil case is comparable to the standard used in ruling on a motion for judgment notwithstanding the verdict:

> "A judgment notwithstanding the verdict on defendants' motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for plaintiff. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 695; 310 NW2d 26 (1981). In reaching a decision, the trial court must view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence. *Isom v Farrugia,* 63 Mich App 351, 354-355; 234 NW2d 520 (1975). If after viewing the evidence in this manner reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. *Id."* *Drummey v Henry,* 115 Mich App 107, 110-111; 320 NW2d 309 (1982), lv den 417 Mich 895 (1983).
>
> As explained in *Killen v Benton,* 1 Mich App 294, 298; 136 NW2d 29 (1965), a " 'judgment notwithstanding the verdict may be allowed only if there is insufficient evidence, as a matter of law, to make an issue for the jury.' "

As indicated by its special verdict, the jury in the instant case accepted plaintiffs' theory that defendant had a custom or policy of inadequately training its officers in the care and custody of intoxicated persons.

In support of this theory, plaintiffs introduced the testimony of two expert witnesses. Dr. Beckman stated that according to national standards a

doorman must have training in the care and safety of prisoners to detect a prisoners' degree of intoxication or the effects of drugs. Based upon his review of Murray's deposition, Beckman concluded that Murray had had no special training for his position as doorman and, accordingly, that Murray had not been properly trained. In addition, Beckman opined that neither Lieutenant Coleman nor Officer Wilson had been properly trained. Finally, when questioned on the overall training provided by the City of Detroit between the years 1970 and 1979, Beckman responded that the training methods "did not and never have" met the national standards.

Mr. Donley concurred in Beckman's assessments. Like Beckman, Donley testified that Murray had not been properly trained as a doorman. Unlike Beckman, however, Donley asserted that in 1978 and 1979 the City of Detroit had a "well written program" for training doormen, but that the program had not been effectively carried out. Finally, Donley explained that, for a number of reasons, a visibly intoxicated prisoner should not be removed from his cell to make a phone call:

> Well, there is a number of reasons. A person could fight. When he is in the cell, locked in a cell, it is very unlikely—not much harm can be done to anybody. If he is taken out of the cell and his contact with an officer or people out in the lobby area, he can cause quite—if a person is in fact intoxicated, stumble and fall and cause an injury.

In addition, Lieutenant Coleman testified that letting plaintiff, an allegedly intoxicated prisoner, out of his cell to make a phone call was consistent with procedures in effect at the precinct.

When this testimony is viewed in a light most favorable to the plaintiffs and plaintiffs are given

the benefit of every reasonable inference which can be drawn from the evidence, I conclude that sufficient evidence was presented to establish that the city either had a policy of failing to train its doormen or that the training provided was so grossly negligent that it amounted to "deliberate indifference." Furthermore, Donley's testimony establishes that the lack of adequate training was likely to cause the very danger which befell plaintiff. Because the doorman was inadequately trained, he permitted a visibly intoxicated person to leave his cell thereby rendering it likely that an injury would occur. Accordingly, the jury could infer that, by failing to train its doormen, the city exhibited a deliberate indifference to the resulting violation. That there was testimony that the city met state standards is not dispositive if those standards are themselves inadequate.

The city contends that municipal policy could never be established absent deliberate action by a designated municipal policymaker. While, concededly, Justice Rehnquist, in a footnote to *Oklahoma City v Tuttle,* 471 US 808; 105 S Ct 2427; 85 L Ed 2d 791 (1985),[1] raised the question, he also specifically refused to address it. See 471 US 824, n 7. And the actual holding of *Tuttle* is far more limited. *Tuttle* stands for the proposition that an isolated incident of police misconduct can never establish municipal liability. Since plaintiffs' allegations of municipal policy are supported by more than the single incident complained of, *Tuttle* does not bar recovery in the instant action. Moreover, in light of the expert testimony regarding the city's training program, the jury could infer that the absence of adequate training or the failure to routinely implement adequate training was a conscious decision by the city's policymakers.

---

[1] Relied on in the majority opinion.

Unlike the situation in *Tuttle,* plaintiffs here presented evidence of a city-wide lack of adequate training or, at least, a grossly negligent training program. The jury's decision was not based on the single, isolated incident, but, rather, on the city's overall failure to provide adequate training as testified to by Beckman and Donley. The expert testimony was sufficient to establish a municipal policy upon which to render the city liable. While the defendant city cast considerable doubt on the opinions of plaintiffs' experts, the jury, in weighing the experts' testimony, obviously resolved those doubts in favor of plaintiffs.

Unlike the majority, I would hold that plaintiffs did establish an "affirmative link" between the city policy and the constitutional deprivation. *Tuttle,* 471 US 823. Both experts testified that proper training would have alerted a doorman to the dangers inherent in caring for intoxicated prisoners. Moreover, Donley specifically stated that one of the dangers attendant upon letting an intoxicated person out of his cell was that the prisoner might stumble, fall and injure himself. Accordingly, the complete failure to train the doorman made the risk of personal injury highly likely and the city's failure to train could be viewed as the "moving force" of the violation, i.e., the injury. I would affirm.

I also cannot agree with the majority that the absence of defendant David Murray was adequately handled. The absence of David Murray was a point of confusion and contention throughout these proceedings. I am convinced that the plaintiffs were at least entitled to an instruction as to Murray's absence.

One variation of the Standard Jury Instructions, SJI 2d 6.01, reads:

(The [*plaintiff/defendant*] in this case has not offered [*the testimony of* _____/_____]. You may infer that this evidence would have been adverse to the [*plaintiff/defendant*] if you believe that the evidence was under the control of the [*plaintiff/defendant*] and could have been produced by [*him/her*], and no reasonable excuse for [*plaintiff's/defendant's*] failure to produce the evidence has been shown.)

This instruction, if requested, should be given when a question of fact arises regarding both "control" and "reasonable excuses." Both questions were raised in the present case and, therefore, the instruction was applicable.

The Supreme Court has held that when an accurate and applicable Standard Jury Instruction has been requested by a party it should be given by the trial court if the court gives any instruction at all on the subject covered by the requested instruction. *Socha v Passino,* 405 Mich 458, 467; 275 NW2d 243 (1979). In *Javis v Ypsilanti Bd of Ed,* 393 Mich 689; 227 NW2d 543 (1975), our Supreme Court held that reversal was required where an applicable and requested jury instruction was not given. In *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985), however, the Supreme Court decided that the *Javis* rule need no longer be applied.

Rather, the *Johnson* Court concluded that failure to give a requested and applicable jury instruction should be reviewed under the harmless error standard of GCR 1963, 529, now MCR 2.613(A), and that the appellate court should set aside a jury verdict only if the failure to do so would be "inconsistent with substantial justice."

In my opinion, the Standard Jury Instruction was clearly applicable and appropriate to the present case. The instruction is meant to encompass

situations where there is a question of fact regarding the cause of the defendant's absence. Such a question of fact was obviously present in this case. In addition, the questions which the jury asked regarding Murray's absence and the judge's comments on his absence further indicate that the instruction was applicable. Moreover, the instruction given by the trial court deviated widely from the standard instruction and failed to make any reference to the inferences contained in the instruction.

Because the question of Murray's absence was raised during the trial and because the court itself noted and instructed the jury on Murray's absence, the court erred in failing to give SJI2d 6.01. Considering David Murray's pivotal role in the events resulting in the injuries, the failure to give the appropriate instruction cannot be viewed as harmless error, and plaintiffs are entitled to a new trial as to David Murray, even if the jury verdict as to the city is overturned.

Except for these two points, I concur in the majority opinion.