BOTSFORD GENERAL HOSPITAL v CITIZENS INSURANCE
COMPANY

Docket No. 121337. Submitted January 8, 1992, at Detroit. Decided
July 20, 1992, at 9:35 A.M. Leave to appeal denied, 441 Mich —.

Botsford General Hospital and Christopher Noel brought an
action in the Oakland Circuit Court against the Citizens Insur-
ance Company, seeking no-fault personal protection benefits for
medical expenses, wage loss, and replacement services arising
out of injuries suffered by Noel in an automobile accident. The
court, Fred M. Mester, J., entered judgment incorporating a
jury award of damages for the plaintiff, finding that the unti-
tled, unregistered, and uninsured automobile that Noel was
driving at the time of the accident was owned by his wife and
that, accordingly, the defendant, pursuant to its assignment by
the assigned claims facility, was obligated to pay personal
protection benefits. The defendant appealed.

The Court of Appeals *held:*

1. Because there was a disputed question of fact concerning
whether Noel was an owner of the automobile he was driving
at the time of the accident, the trial court properly submitted
the question of the ownership to the jury. The failure to strictly
comply with the statutory provisions relating to the transfer of
an automobile title did not preclude the jury from considering
the question whether Noel was an owner of the vehicle or
deciding that he was not an owner.

2. Reversal is required because of the admission into evi-
dence, over the defendant's objection on hearsay grounds, of the
handwritten sales receipt of the former owner of the vehicle
that indicated that the vehicle was being sold to Noel's wife.
Under the circumstances, there was insufficient indicia of relia-
bility in the nature of the document to warrant its admission
into evidence under the rule excepting from the hearsay rule

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 *et seq.*; Evidence §§ 497,
498, 834; Limitation of Actions § 265; Physicians, Surgeons, and
Other Healers §§ 378 *et seq.*; Subrogation §§ 11 *et seq.*, 129.

See the Index to Annotations under Automobile Insurance; Docu-
mentary Evidence; Limitation of Actions; Subrogation.

documents purporting to establish or affect an interest in property.

3. Bostford Hospital was entitled to bring a subrogation claim for that portion of its charges that had not been paid by Medicaid. The fact that, in the absence of insurance benefits, the hospital would have had to accept the Medicaid payments as payment in full did not preclude the hospital from seeking from the defendant the difference between its reasonable charges for the medical services it provided and the amount paid by Medicaid. Neither does the fact that the state has a statutory right of subrogation against the defendant for the amount of the Medicaid payments preclude the hospital from proceeding with its claim for the charges not paid by Medicaid.

4. Because the hospital's claim arose by subrogation from Noel's claim and Noel commenced his action within the statutory one-year limitation period after the accident, the hospital could intervene and commence its action more than one year after the accident.

5. There was sufficient evidence to support the jury's award of damages for replacement services.

6. Because the defendant did not pursue zealously during discovery the production of plaintiff Noel's tax documents, neither the court's allowing the jury to consider the question of wage loss without the production of those records nor the court's refusal to instruct the jury concerning the failure to produce those records requires reversal.

Reversed and remanded.

MICHAEL J. KELLY, P.J., dissenting, stated that the admission of the sales receipt into evidence was not critical to the plaintiff's proofs, that the error in its admission was harmless, and that, accordingly, the verdict and judgment should be affirmed.

1. AUTOMOBILES — TITLES — VEHICLE CODE — JURY QUESTIONS.

Failure to comply strictly with the statutory provisions relating to the transfer of the title of an automobile does not preclude submission of the question of its ownership to the jury (MCL 257.233; MSA 9.1933).

2. EVIDENCE — HEARSAY — RULES OF EVIDENCE — DOCUMENTS.

Documents relating to personalty, including contracts and bills of sale, are included within the rule of evidence that excepts from the hearsay rule statements contained in a document purporting to establish or affect an interest in property where: the circumstances in which the instrument was made and the financial interests at stake promote reliability, the statement at issue is germane to purposes of the document, and subsequent

dealings with the property have not been inconsistent with the tenor of the document (MRE 803[15]).

3. INSURANCE — NO-FAULT — PERSONAL PROTECTION BENEFITS —
   HEALTH CARE PROVIDERS — MEDICAID.

   A health care provider that has received Medicaid payments for medical services provided to a patient who suffered injuries in an automobile accident may seek from the patient's no-fault insurer reimbursement of any reasonable charges for services that Medicaid did not pay, even though in the absence of insurance benefits the provider would have had to accept the Medicaid payment as payment in full; the statutory right of subrogation of the state extends only to the amount of the Medicaid payments and does not automatically foreclose other claims (MCL 400.106[1][b][ii]; MSA 16.490[16][1][b][ii]).

4. INSURANCE — NO-FAULT — HEALTH CARE PROVIDERS — LIMITATION
   OF ACTIONS — SUBROGATION.

   A health care provider need not bring its action against a no-fault insurer for medical services provided to an insured injured in an automobile accident within the statutory one-year limitation period where the health provider's claim is one that arises by subrogation from the patient's claim and the patient commenced an action for medical expenses within the one-year limitation period (MCL 500.3145; MSA 24.13145).

*Zweig & Lane, P.C.* (by *Carol L. Fossee*), for Botsford General Hospital.

*John R. Hocking, III,* for Christopher Noel.

*Anselmi & Mierzejewski* (by *Joseph S. Mierzejewski*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and JANSEN and T. J. LESINSKI,* JJ.

T. J. LESINSKI, J. Defendant, Citizens Insurance Company, appeals as of right a September 18, 1989, judgment of the Oakland Circuit Court involving no-fault personal protection insurance (PIP)

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

benefits. Following an August 1989 jury trial, plaintiffs, Christopher Noel and Botsford General Hospital, were awarded damages in the amount of $83,211.80, payable by Citizens. Citizens claims as error several rulings by the court.

On November 9, 1985, Christopher Noel was involved in an automobile accident while driving a 1977 Mercury Monarch. That vehicle was uninsured, as were the two other vehicles in the Noel household. The license plate on the Monarch was registered to another automobile owned by Mary Noel, plaintiff's wife. As a result of injuries sustained in the accident, plaintiff was taken to Botsford General Hospital, where he subsequently underwent six surgical procedures.

Because Christopher Noel (hereafter plaintiff) had no source of PIP coverage for the claimed losses, he filed an application with the Michigan Department of State assigned claims facility, pursuant to MCL 500.3171 *et seq.*; MSA 24.13171 *et seq.* On the face of the application, in the space marked "owner of vehicle involved," the application states "just purchase (sic) by Chris Noel."

Under Michigan law, the owner of an uninsured motor vehicle involved in an accident is ineligible for no-fault benefits, including benefits through the assigned claims plan. See MCL 500.3113(b); MSA 24.13113(b) and MCL 500.3173; MSA 24.13173. During the investigation conducted by Dena Hendon of the assigned claims facility, Mary Noel advised Hendon that the vehicle had been purchased by plaintiff shortly before the accident. Dena Hendon denied the claim, after making a determination that plaintiff owned the vehicle and, therefore, was ineligible for benefits.

On May 9, 1986, plaintiff submitted a second application for benefits to the assigned claims facility. In the space designated "owner of vehicle

involved," this application states "Mary Noel."
Upon receipt of this second application, Hendon
assigned plaintiff's claim to Citizens for further
investigation regarding ownership.

Meanwhile, Botsford General Hospital submitted
its billings for treatment of plaintiff to the Michigan Department of State for payment. The Department of Social Services paid the hospital a statutory percentage of the $43,992.92 amount submitted. The DSS also began its own investigation into
the ownership of the vehicle and applicable insurance coverage for the loss.

After corresponding with Dennis Howder on the
subject of the sale and ownership of the Monarch,
the DSS in October 1986 concluded that plaintiff
was the owner of the vehicle and sought no further reimbursement from Citizens for the bills it
had paid on plaintiff's behalf.

Plaintiff filed suit against Citizens on October 6,
1986. Botsford General Hospital subsequently
moved to intervene for the purpose of recovering
its claimed medical expense losses. Intervention
was granted on November 15, 1988. The matter
proceeded to trial. The jury returned a verdict in
favor of plaintiffs in the amount of $83,211.80,
including hospital expenses, wage loss, replacement service costs, and interest. Citizens appeals
the jury verdict. We reverse.

I

The first issue is whether the trial court properly left to the jury the question regarding who
owned the 1977 Mercury Monarch.

Under Michigan law, a person is not entitled to
be paid PIP benefits if that person was the owner of
a motor vehicle involved in an accident and that
vehicle was required to be, but was not, insured

under Michigan's no-fault act. MCL 500.3113; MSA 24.13113 and MCL 500.3173; MSA 24.13173. The Vehicle Code, MCL 257.37(b); MSA 9.1837(b), defines "owner" as "a person who holds the legal title of a vehicle." This provision has been incorporated into the Michigan no-fault act. *Albanys v Mid-Century Ins Co,* 91 Mich App 41, 45-46; 282 NW2d 11 (1979).

At trial, evidence indicated that not long before the accident the Monarch had been purchased from Dennis Howder. Plaintiff gave $300 cash to Howder and took possession of the car. Although Howder signed the certificate of title, neither he nor Noel filled in the line designated for the new owner. At the time of sale, a license plate registered to Mary Noel was placed on the car.

Over a hearsay objection by Citizens, the trial court admitted an October 15, 1985, handwritten receipt that stated that the $300 paid for the Monarch was "received from Mary Noel." Evidence was also admitted that at the time of the accident no application for a new title had been filed with the Secretary of State. Thus, title was still under the name of Dennis Howder.

Plaintiff claimed that although he actually conducted the purchase transaction with Howder, the purchase money was his wife's and he was merely taking delivery of the car as her agent. Mary Noel testified that she had retained actual possession of the title since the purchase and that the car carried her license plates. Additional evidence of ownership included statements made on plaintiff's multiple applications for insurance benefits.

Section 233 of the Vehicle Code, MCL 257.233; MSA 9.1933, which concerns transfers of title, provides:

(4) The owner shall indorse on the back of the

certificate of title an assignment of the title with warranty of title in the form printed on the certificate . . . and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle. . . .

(5) Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle shall be the date of execution of either the application for title or the certificate of title.

According to Citizens, the parties' failure to comply strictly with the provisions of § 233 precluded the lower court from permitting the question of ownership to reach the jury. Rather, Citizens argues that the undisputed fact that plaintiff actually handed the money to the seller, took possession of the vehicle, and received delivery of the certificate of title conclusively established him as the owner under § 233.

Legal title and ownership of a vehicle are not coextensive terms under the Vehicle Code; more than one person may be liable as "owner," even if no one possesses all the normal incidents of ownership. *Messer v Averill,* 28 Mich App 62, 65, n 2; 183 NW2d 802 (1970). The question of ownership is one of fact that is to be decided by the factfinder. *Albanys v Mid-Century Ins Co,* 407 Mich 925 (1979), rev'g 91 Mich App 41; 282 NW2d 11 (1979); *John v John,* 47 Mich App 413; 209 NW2d 536 (1973).

Citizens accepts that "ownership" is a question of fact relative to plaintiff, but argues that the same is not true relative to Mary Noel. We disagree. The proper focus of inquiry is whether plaintiff was an "owner" of the vehicle, not

whether Howder had effectively transferred its title. Plaintiff would be entitled to PIP benefits under the assigned claims plan, MCL 500.3171 *et seq.*; MSA 24.13171 *et seq.*, regardless of whether Howder or Mary Noel owned the vehicle, so long as plaintiff himself was not an owner.

We conclude that the lower court did not err in permitting the question of Mary Noel's ownership to be decided by the jury rather than granting Citizens' motion for a directed verdict. Viewing the evidence in the light most favorable to plaintiff, we find that there was a question of fact concerning ownership. See *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 463; 436 NW2d 389 (1988).

II

Citizens next argues that it was error for the trial court to admit the handwritten sales receipt into evidence under the exception to the hearsay rule that allows documents affecting an interest in property to be entered into evidence.

MRE 803(15) excepts from the hearsay rule the following:

> A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

Only one Michigan case discusses MRE 803(15), and that case applied the exception to facts contained in a will. See *People v Burton,* 177 Mich App 358; 441 NW2d 87 (1989). Moreover, there is a dearth of federal case law regarding the issue and

none that this Court could find concerning documents dealing with personalty rather than real property. On the other hand, 4 Weinstein, Evidence, § 803(15)[01], p 307, indicates that documents concerning personalty, including contracts or bills of sale, are included in the exception as long as other requirements are met:

> The rule rests both on necessity—for litigation may arise so many years after a conveyance that declarants and witnesses to the transaction may be unavailable—and on a number of indicia of trustworthiness: (1) the circumstances in which dispositive instruments are made and the financial interests at stake promote reliability; (2) the fact that the recital is in writing eliminates the danger of inaccuracy of transmission; (3) since the statement must be germane to the purpose of the document, a protest would be expected about an untrue fact intrinsic to the transaction; and (4) the exception does not apply if dealings with the property have been inconsistent with the tenor of the document.

The second element is met here because the receipt is in writing, which eliminates any danger regarding the accuracy of transmission. The third element is met because the document is germane to the purpose of its execution, i.e., to establish the sale of the 1977 Monarch to Mary Noel. And we find that the fourth element is met because the fact that plaintiff was driving the Monarch at the time of the accident is not necessarily inconsistent with an intent to sell the Monarch to Mary Noel. The remaining question is whether the first element was met. We find that it was not.

For the receipt to qualify for admission under the hearsay exception, the first element requires that it must be made under circumstances that promote reliability. *Id.* The basis for the rule

excluding hearsay evidence is that such evidence is not subject to the tests that can ordinarily be applied to ascertain the truth of an assertion, whether written or oral. See 29 Am Jur 2d, Evidence, § 493, pp 551-552. When hearsay evidence is used, its declarant is not before the factfinder, and the factfinder cannot cross-examine the declarant or evaluate his demeanor. *Id.* at 552. Nevertheless, admission of the evidence may be permitted under an exception to the hearsay rule where the inherent indicia of reliability in such documents weigh in favor of admission, even though the declarant is not before the factfinder. See generally Wigmore, Evidence (Chadbourn rev), § 1420-1423, pp 251-255; see also *Solomon v Shuell,* 435 Mich 104, 119-120; 457 NW2d 669 (1990).

MRE 803(15) is identical to FRE 803(15). The Advisory Committee's Note to FRE 803(15) highlights the element requiring that the document be made under circumstances that promote reliability:

> Exception (15). Dispositive documents often contain recitals of fact. Thus a deed purporting to have been executed by an attorney in fact may recite the existence of the power of attorney, or a deed may recite that the grantors are all the heirs of the last record owner. Under the rule, these recitals are exempted from the hearsay rule. The circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be adequate guarantees of trustworthiness, particularly in view of the nonapplicability of the rule if dealings with the property have been inconsistent with the document. The age of the document is of no significance, though in practical application the document will most often be an ancient one.

We believe that the handwritten sales receipt at issue here was not made under circumstances that promote its reliability. The federal committee note refers to a type of document that would be filed with a governmental agency, namely, a deed for real property. Although statements contained in documents intended for filing may meet the standard of reliability, we believe that handwritten documents that would be neither filed nor signed by anyone not a party to the transaction do not satisfy the reliability element. A certificate of title, on the other hand, would meet the reliability standard where filed with the appropriate agency. In light of what little authority exists regarding this issue, we conclude that the handwritten receipt does not qualify for admission under MRE 803(15). The admission of the receipt was therefore an abuse of discretion requiring reversal. See *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988).

III

Next, Citizens argues that the health care providers, including Botsford General Hospital, were statutorily bound to accept the amounts received as payment in full for their services, regardless of any additional costs incurred while treating plaintiff.[1] The essence of Citizens' argument is that acceptance of Medicaid payments for injuries suffered in accidents involving automobiles discharges an assigned claims servicing insurer from liability to the claimant or the providers of medical services for charges exceeding the statutory amount paid by Medicaid.

---

[1] An employee of Botsford General Hospital in patient accounting testified that of the approximately $40,000 in bills submitted to Medicaid for plaintiff's expenses, Medicaid had paid a percentage, or approximately $10,000.

Medicaid assistance is made available under the Social Welfare Act to the "medically indigent." See MCL 400.105(1); MSA 16.490(15)(1). A "medically indigent" individual is defined by statute as one whose

> need for the type of medical assistance available under this act for which application has been made has been professionally established and payment for it is not available through the legal obligation of a contractor, public or private, to pay or provide for the care without regard to the income or resources of the patient. [MCL 400.106(1)(b)(ii); MSA 16.490(16) (1)(b)(ii).]

MCL 500.3172(1); MSA 24.13172(1) provides that a person is entitled to PIP benefits under the assigned claims plan where the injury arises "out of the ownership, operation, maintenance, or use of a motor vehicle . . . if no personal protection insurance is applicable to the injury . . . ." Assuming that Noel was not an owner of the vehicle involved in the accident, he qualifies for assigned claims PIP benefits. Where a person qualifies for PIP benefits under the assigned claims plan, he does not satisfy the definition of "medically indigent" found in MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii) for the reason that he is thereby entitled to medical assistance "available through a legal obligation of a contractor, public or private. . . ." *Johnson v Michigan Mutual Ins Co,* 180 Mich App 314, 320-321; 446 NW2d 899 (1989); see also *Workman v DAIIE,* 404 Mich 477, 501-502; 274 NW2d 373 (1979). Whether Noel was an "owner" of the vehicle, which would disqualify him from receiving no-fault PIP benefits, is another question to be decided upon remand.[2]

---

[2] Citizens points out that the DSS is "subrogated to any right of

IV

Citizens also claims that because the DSS was statutorily subrogated to the rights of the claimant and the services providers to pursue Citizens, both plaintiff and Botsford General Hospital lack standing to bring this claim. However, as plaintiff Botsford points out, the right of subrogation of the DSS is intended to ensure that it does not bear primary responsibility for payment of benefits. The Social Welfare Act does not create in the state an exclusive right of subrogation and, in fact, establishes the right of the injured person to seek payment for reasonable medical costs. MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii) states:

> An action taken by the state or the state department [Department of Social Services] in connection with the right of recovery afforded by this section shall not operate to deny the injured, diseased, or disabled person any part of the recovery beyond the costs expended on the person's behalf by the state department.

Although the DSS had a right of subrogation, it did not have a right of subrogation of plaintiff's entire claim. Thus, the decision of the DSS not to pursue its claims against Citizens did not automatically foreclose claims by plaintiff and Botsford General Hospital seeking recovery from Citizens.

V

Citizens argues that Botsford General Hospital was barred from intervening in this case because

recovery which a patient may have for the cost of hospitalization" for sums that it pays as Medicaid benefits. See MCL 400.106(1)(b)(ii); MSA 16.490(16)(1)(b)(ii). Thus, the DSS is entitled to collect its expenditures, approximately $10,000, from defendant Citizens if it is determined that Citizens is liable to Noel for PIP benefits pursuant to the assigned claims plan, MCL 500.3171 *et seq.*; MSA 24.13171 *et seq.*

Botsford's claim was submitted more than two years after the period of limitation applicable to plaintiff's claim had expired.

MCL 500.3145; MSA 24.13145 provides:

An action for a recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of the injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. . . . The notice of the injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

Plaintiff's original complaint against Citizens, filed on October 6, 1986, claimed reimbursement for "all reasonable charges, unlimited amount for medical and/or rehabilitative expenses and hospital charges." Botsford's cross-complaint, filed on November 15, 1988, states:

5. The reasonable charges for medical treatment rendered to Plaintiff at Botsford General Hospital totalled $43,922.92.

* * *

7. Botsford General Hospital is subrogated to the rights of Plaintiff Christopher Noel with respect to insurance for medical treatment at Botsford General Hospital from Defendant Citizens Insurance Company of America.

The purpose of the one-year limitation is to

protect against stale claims and protracted litigation. *Pendergast v American Fidelity Fire Ins Co*, 118 Mich App 838, 841-842; 325 NW2d 602 (1982). The notice to the insurer anticipated by the statute was provided in the first complaint, which was filed within the one-year limitation period. Botsford's claims did not change or enlarge the claims already in existence. Accordingly, we conclude that the trial court did not err in granting Botsford's motion to intervene, nor was it error to deny Citizens' motion for a directed verdict with respect to the issue of the statute of limitations.

VI

Citizens contends that the jury award of $3,600 for replacement services was improper because plaintiff did not prove he actually incurred any expenses for such services. The following testimony was given by Mary Noel regarding the changes in their household after the accident:

> *Q.* All right. You were saying your living room is what?
> *A.* Becomes a make-shift hospital room, so to speak. We had the IV's, and we had medication, and things to clean his wound and dress it.
> *Q.* How long did that go on?
> *A.* That went on for a long, long, time. At least a year, if not more.
>
> *        *        *
>
> *Q.* After the accident, was there anything that you had to do around the house that Mr. Noel normally did around the house?
> *A.* Well, yeah, I did everything. I became a mom and a dad. As far as mowing the grass, taking out the trash, shoveling of the sidewalks, you know, being more attentive to the kids . . .
> It was everything I had to do, run to the store,

which normally he would be the one to run out and get milk, do little things like that.

Personal protection insurance benefits recoverable under Michigan's no-fault act included, at all pertinent times,

> expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent. [MCL 500.3107(b); MSA 24.13107(b), see now MCL 500.3107(c); MSA 24.13107(c).]

In addition, case law also permits the recipient of no-fault PIP benefits to recover for replacement services provided by family members. See *Van Marter v American Fidelity Fire Ins Co,* 114 Mich App 171; 318 NW2d 679 (1982); *Visconti v DAIIE,* 90 Mich App 477; 282 NW2d 360 (1979); see also *Kushay v Sexton Dairy Co,* 394 Mich 69; 228 NW2d 205 (1975).

Arguably, the record in this case could have been developed to reflect in more detail the services provided by Mary Noel to plaintiff. However, the evidence that plaintiff spent nearly a year in a makeshift hospital bed in the Noels' living room could support a finding that Mary Noel's services exceeded those expected of a spouse under normal circumstances.

When reviewing the sufficiency of the evidence in a civil action, this Court must view the evidence in the light most favorable to the plaintiff, and give the plaintiff the benefit of every reasonable inference that can be drawn from the evidence. If, after reviewing the evidence, reasonable people

could differ, the question is properly left to the trier of fact. *Boggerty v Wilson,* 160 Mich App 514, 522; 408 NW2d 809 (1987). Accordingly, the questions concerning whether plaintiff was entitled to collect the value of replacement services, and the determination of that value, were properly left to the jury. The trial court, viewing the evidence in the light most favorable to plaintiff, did not err in denying Citizens' motion for a directed verdict with respect to the issue of replacement services.

VII

Citizens argues that the trial court erred in giving the following jury instruction:

> In Michigan, two or more writings to a transaction, if they clearly relate to the same transaction, are to be construed together. Therefore, if you find that the receipt from [the seller] and the title to the car sold, were given at the same time by [the seller], you should read them or construe them together.

In its place, Citizens offered an instruction to the effect that ownership of the vehicle under these facts is established by referring to the legal title of the vehicle, MCL 257.37(b); MSA 9.1837(b), and that the transfer-of-title statute, MCL 257.233; MSA 9.1933, mandates that plaintiff, as recipient of the title, keys, and the vehicle at the time of purchase, became the owner.

As discussed earlier, the transfer-of-title statute does not mandate that plaintiff be considered the "owner" of the vehicle. Rather, ownership was a question of fact to be resolved by the jury. However, the objectionable jury instruction does make reference to the handwritten receipt that was improperly admitted into evidence under a hear-

say exception. For this reason, we conclude that the instruction was erroneous. Whether this error requires reversal need not be addressed because the case is to be reversed and remanded for error in the admission of the handwritten sales receipt.

## VIII

Citizens contends that it was error for the trial court to permit the issue of wage loss to go to the jury without production of plaintiff's income tax returns or business records. Citizens requests reversal and remand with instructions to grant Citizens' motion for a directed verdict or, alternatively, to include a standard jury instruction concerning the failure to produce evidence if plaintiff refuses to produce these records on remand. See SJI2d 6.01(a).

Plaintiff was awarded $7,845.50 for wage loss. He had been working before the accident as an independent contractor for Thermo Window Corporation. Citizens had served plaintiff with a motion to produce income tax returns for the purpose of determining wage loss. When the documents were not produced, Citizens did not move for an order to compel production. During cross-examination, defense counsel asked plaintiff about his failure to authorize release of the tax records. Pursuant to objection, the trial court ascertained that no such order to compel had been filed and precluded Citizens from probing into the issue in this manner at trial.

SJI2d 6.01(a) permits the jury to infer that evidence that was under a party's control and for which the party gave no reasonable excuse for nonproduction would have been adverse to that party. *Zmija v Baron,* 119 Mich App 524, 540; 326 NW2d 908 (1982), rev'd on other grounds 422 Mich

900 (1985). It is undisputed that the issue of wage loss was material. Citizens, however, admitted at trial that no motion to compel the production of the tax records had been made.

The trial court's refusal to give Citizens' instruction, in light of the fact that Citizens did not zealously pursue the production of the tax documents during discovery, is not so inconsistent with substantial justice as to require reversal. See *Moghis v Citizens Ins Co of America,* 187 Mich App 245, 251; 466 NW2d 290 (1990). Other evidence from which wage loss could have been determined was presented to the jury, even though some of it was contradictory. At trial, plaintiff testified that his wage loss was $710 a week. His first application for benefits claimed $1,000 a week and his second application claimed $1,200 a week. Plaintiff's 1099 form from Thermo Window was also introduced into evidence.

IX

Finally, Citizens argues that it was error for the plaintiff's taxed bill of costs, including mediation sanctions sought pursuant to MCR 2.403(O), to be entered by the court clerk without a hearing. We believe that this issue should be decided on remand after the matter of liability has been conclusively established.

Reversed and remanded for a new trial.

JANSEN, J., concurred.

MICHAEL J. KELLY, P.J., *(dissenting).* I respectfully dissent. I believe that the error of admitting exhibit 1, the receipt signed by the vehicle seller, Dennis Howder, was harmless and does not require reversal.

The plaintiff's burden was not to establish who was the owner of the vehicle, but only that he was not. I believe plaintiff adequately established the circumstances of the transaction and that the receipt was not critical. The jury could have believed that Christopher Noel was his wife's agent in picking up the car, that the car was purchased to replace Mrs. Noel's disabled vehicle, that she supplied the money to buy it, and that the license plate from her old car was put onto the new one. This evidence did not depend on the receipt made out to Mary Noel, which was erroneously admitted. Furthermore, there was evidence concerning a contact with Dennis Howder by the Department of Social Services regarding the subject of the transaction, but no party offered any testimony of Dennis Howder. If consideration of the certificate of title alone is controlling, then under MCL 257.233; MSA 9.1933, Dennis Howder was the owner of record and title never legally passed to either of the Noels. Compare *Michigan Mutual Ins Co v Reddig,* 129 Mich App 631; 341 NW2d 847 (1983). Finally, representatives of defendant insurance company were in contact with Dennis Howder and yet failed to produce him in support of any claim it made to the effect that plaintiff Christopher Noel was the owner of the vehicle. I conclude either that Howder's testimony would have been adverse to Citizens or that the failure to introduce his testimony or his deposition should be taken as an indication that his testimony would have been favorable to Christopher Noel.

I would affirm.