*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN HEAD & SPINE INSTITUTE, PC, and
MCLAREN MACOMB,

     Plaintiffs-Appellants,

and

DANIEL CRANE,

     Plaintiff-Appellee,

and

REGENTS OF THE UNIVERSITY OF
MICHIGAN,

     Plaintiff,

v

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

     Defendant-Appellee.

FOR PUBLICATION
May 15, 2025
2:44 PM

No. 367681
Macomb Circuit Court
LC No. 2021-002392-NI;
     2022-000088-NF

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

In these consolidated cases under the no-fault act, MCL 500.3101 *et seq.*, plaintiff-appellants, Michigan Head & Spine Institute, PC and McLaren Macomb (collectively, the providers) appeal as of right the trial court order granting defendant Nationwide Mutual Fire Insurance Company's motion to interplead funds and apportioning the available funds between the

-1-

providers and plaintiff-appellee Daniel Crane.[1]  For the reasons stated in this opinion, we reverse and remand for further proceedings.

## I.  BASIC FACTS

On January 7, 2021, Crane was driving his girlfriend's car at a high speed when he lost control of the vehicle, which then struck a guardrail, went airborne, hit a parked vehicle, and crashed into a building.  He was transported by ambulance to McLaren Macomb Hospital, where he was treated before his transfer to Royal Oak Beaumont Hospital for further treatment by Michigan Head & Spine, including multiple spinal surgeries.  After his discharge from Beaumont, Crane was admitted to University of Michigan Hospital for still further treatment. As a result of his injuries, Crane is a partial quadriplegic.

Because he was not covered under any no-fault policy, Crane applied for coverage under the Michigan Assigned Claims Plan (MACP).  On February 19, 2021 and April 9, 2021, the providers submitted claims to the Michigan Automobile Insurance Placement Facility (MAIPF) for payment under the MACP and they requested the assignment of a no-fault insurer.  The MAIPF assigned Nationwide.  After their bills were refused by Nationwide, the providers submitted their bills to Medicaid and received payment.

On July 2, 2021, Crane filed an action against Nationwide, seeking benefits under the no-fault act.  On January 6, 2022, while Crane's case was pending in the trial court, the providers filed a lawsuit also seeking benefits under the no-fault act.  The trial court consolidated the cases. Thereafter, Nationwide filed a motion to interplead $250,000, which is the statutory maximum for personal protection insurance (PIP) benefits under the assigned-claims plan under MCL 500.3172(7)(a) and MCL 500.3107c(1)(b).  Nationwide argued that the provider's claims, Crane's claims for attendant-care benefits, and a Medicaid lien exceeded the statutory maximum. Nationwide requested that the court grant its motion to interplead, allow it to tend $250,000 to the court for apportionment under MCL 500.3112, and discharge it from its statutory duties.

Following extensive briefing and argument on the motion, the parties submitted a set of stipulated facts to the trial court.  Thereafter, the court entered an opinion and order granting Nationwide's motion to interplead and it apportioned the benefits due under the no-fault act.  The trial court first found that Crane was "medically indigent" as defined in the Social Welfare Act, MCL 400.1 *et seq*.  It then awarded 90.7% of the benefits to Crane and 9.3% to the providers, finding that "to be an equitable apportionment of the extremely limited funds available following this catastrophic accident."  This appeal follows.

## II.  MEDICAL INDIGENCY

As an initial matter, the providers challenge the trial court's finding that Crane is medically indigent.  At the outset, we note that the trial court's ruling on this issue was inconsistent.  Under MCL 400.111b(14), "a provider shall accept [Medicaid] payment from the state as payment in full

---

[1] The Regents of the University of Michigan were also named as a plaintiff; however, that claim has been resolved.

by [a] medically indigent individual for services received," meaning that if Crane were medically indigent, the Medicaid payments received by the providers should have constituted payment in full, and the trial court should not have awarded them anything. As noted above, the court nevertheless awarded the providers a portion of the available funds despite finding Crane to be medically indigent. That inconsistency renders the practical significance of Crane's status unclear. Even so, because the trial court's apportionment of benefits appears to have been influenced by its understanding of medical indigency, we will review the issue.

The trial court concluded that Crane was medically indigent because his medical expenses for his catastrophic injuries far exceed the maximum statutory PIP benefits to which he is entitled. Crane agrees, arguing that, because he is medically indigent, the providers are statutorily bound to accept the payments they received from Medicaid as payment in full of their bills.[2] However, a medical provider's acceptance of a mistaken payment of Medicaid benefits on behalf of a plaintiff does not release the plaintiff from his or her "responsibility for the medical expenses incurred but not paid for, nor does it bind [the providers] to limit [their] claim to the statutory amount allowed for Medicaid benefits." *Hicks v Citizens Ins Co of America*, 204 Mich App 142, 146; 514 NW2d 511 (1994). As a result, resolution of this issue turns upon whether Crane was or was not entitled to Medicaid payments at the time that the providers received the payments from Medicaid.

Medicaid assistance is available to the "medically indigent." *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 138; 489 NW2d 137 (1992), citing MCL 400.105(1). By statute, a person is medically indigent if the

> need for the type of medical assistance available under this act for which the individual applied has been professionally established and payment for it is not available through the legal obligation of a public or private contractor to pay or provide for the care without regard to the income or resources of the patient. [MCL 400.106(b)(*ii*)]

"The availability of [PIP] benefits [under the MACP] render[s] [a] plaintiff medically nonindigent and, therefore, ineligible for Medicaid benefits." *Hicks*, 204 Mich App at 146. See also *Botsford*, 195 Mich App at 138 (holding that a person entitled to PIP benefits under the no-fault act is not medically indigent under MCL 400.106(1)(b)(ii) because he is entitled to medical assistance "available through a legal obligation of a contractor, public or private . . . .").

Crane argues that *Hicks* and *Botsford* are inapplicable because, at the time that they were decided, PIP benefits under the no-fault act were unlimited. He suggests that because there are finite benefits available and because his medical expenses for his catastrophic injuries far exceed them, he should be considered medically indigent. Yet, at the time that the providers received

---

[2] Crane's argument could be construed as challenging whether the trial court should have awarded any money to the providers at all, but Crane also asks us to affirm the trial court's opinion. In any event, "[i]n the absence of a cross appeal, errors claimed to be prejudicial to appellee cannot be considered nor may appellee have an enlargement of relief." *Pontiac Twp v Featherstone*, 319 Mich 382, 390; 29 NW2d 898 (1947).

payment from Medicaid, Crane's PIP benefits had not been exhausted. Indeed, the trial court ultimately ordered that a portion of the funds be paid to the providers and a portion be paid to Crane. The court would not have been able to order a distribution of PIP benefits to either Crane or the providers if such medical benefits were not available to Crane. Accordingly, because Crane was entitled to medical assistance "available through a legal obligation of a contractor, public or private," he did not qualify as a medically indigent person under MCL 400.106(1)(b)(*ii*). The trial court, therefore, erred by finding that Crane was medically indigent.

## III. INTERPRETATION OF THE NO-FAULT ACT

### A. STANDARD OF REVIEW

The providers argue that the trial court erred in its interpretation of and application of the no-fault act. Whether the trial court properly interpreted and applied the no-fault act is reviewed de novo. *Miclea v Cherokee Ins Co*, 333 Mich App 661, 666; 963 NW2d 665 (2020). The goal of statutory interpretation is to "effect the intent of the Legislature." *In re Casey Estate*, 306 Mich App 252, 256-257; 856 NW2d 556 (2014).

> To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In construing a statute, this Court should give every word meaning, and should seek to avoid any construction that renders any part of a statute surplus or ineffectual. It is well established that to discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole. Provisions not included by the Legislature should not be included by the courts. [*Id*. at 257 (quotation marks and citation omitted).]

### B. ANALYSIS

The no-fault act was adopted in 1973 "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Kelley*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). "The act created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). As relevant to the issues raised in this appeal, PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). When an injured person lacks no-fault insurance, the no-fault act establishes an order of priority for payment of PIP benefits "by the insurers of the various vehicles involved, by the insurers of the owners or operators of the vehicles involved, or by the . . . MACP." *Williamson v AAA of Mich*, 513 Mich 264, 266; 15 NW3d 546 (2024). Benefits through the MACP are available to an injured person if there is no PIP insurance that (1) is applicable to the injury, (2) can be identified, (3) can be ascertained because of a dispute between two or more insurers, or (4) the only applicable PIP insurance is inadequate to provide benefits at statutorily required levels because of the financial inability of one or more insurers. MCL 500.3172(1).

Because the statutory maximum no-fault benefits available are limited to $250,000, see MCL 500.3172(7)(a) and MCL 500.3107c(1)(b), and because the claims submitted to Nationwide exceed that maximum, the question is how the available funds should be dispersed. The providers argue that, under MCL 500.3142, the funds must be disbursed on a "first in, first out" (FIFO) basis. They contend that such a method provides the "most fair method" for paying claims and that it is applied in other legal contexts.

In support of their argument the providers direct this Court to three provisions in MCL 500.3142. First, under § 3142(1), PIP benefits "are payable as loss accrues." Second, under § 3142(2), benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." Finally, under § 3142(3), if a bill is not provided to the insurer within 90 days after the product, service, accommodations, or training is provided, the insurer has an additional 60 days to pay before the benefits are overdue. Considering each provision together, the providers maintain that the Legislature has always specifically contemplated the payment of benefits on a FIFO basis.

However, although § 3142 provides a deadline for an insurer's payment of benefits, its plain language does not require that claims be paid on the basis of FIFO. Instead, the statutory language in § 3142 merely establishes that benefits are overdue if not paid within the stated period. There is no language indicating that an insurer will violate § 3142 if it pays a particular claim before an earlier received claim, so long as both claims are paid within the specified time. Nor is there any statutory language prohibiting an insurer from paying benefits on such a basis.

The providers quote *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018), as support for the proposition that "the Legislature's decision to leave the 30-day requirement intact clearly evidences its continuing policy 'to provide sure and speedy recovery o[f] certain economic losses resulting from motor vehicle accidents.' " However, *Bazzi* was decided before the passage of the 2019 amendments to the no-fault act, and the Supreme Court was not addressing MCL 500.3142. It is, therefore, not persuasive as to an interpretation of MCL 500.3142 either before or after the 2019 amendments to the no-fault act.

The providers argue that other no-fault states with limited benefits apply the FIFO method because "it is the only workable system." We do not find the out-of-state opinions persuasive. First, in *Northwood Sports Med and Physical Rehab Inc v State Farm Mut Auto Ins Co*, 130 So 3d 1049 (Fla App, 2014), the court did not apply the FIFO method to determine priority of payment for limited PIP benefits. Rather, the court noted that "the English rule of priorities, which gives priority to an assignee first giving notice to the creditor, does not apply to PIP payments which are governed by statute." *Id*. at 1054. Next, in *Hackensack Surgery Ctr v Allstate Ins Co*, unpublished opinion of the Superior Court of New Jersey, Appellate Division, issued September 5, 2017 (Docket No. A-3896-15T3), the court did not specifically address whether limited PIP benefits must be paid on the basis of FIFO. Instead, the court required the insurer to pay the plaintiff $2,036.99 (which exceeded the $15,000 policy limit because the insurer had earlier paid another provider whose claim came due after the plaintiff's). *Id*., unpub op at 7-8. In reaching that decision, the court noted that there was no statutory guidance on the issue, so it construed the pertinent New Jersey statute "to require the insurer to pay PIP benefits *immediately* upon determination that the loss is due and owing . . . ." *Id*., unpub op at 7. However, Michigan's no-

fault act does not require immediate payment. See MCL 500.3142. Neither case is persuasive to the interpretation of Michigan's no-fault act.

The providers assert that FIFO is the fairest method of paying claims, and point out that it is applied in a variety of legal contexts, including property and patent law. The application of FIFO or FIFO-like policies in other areas of the law, however, has no bearing on the interpretation of the no-fault act. Rather, we turn to the statutory language, which, as indicated above, neither mandates nor prohibits distribution of benefits on a FIFO basis.

In sum, the trial court did not err by declining to require Nationwide to distribute the available PIP benefits based upon which claimant first submitted a claim to Nationwide.

We next consider whether the trial court erred by apportioning the available PIP benefits under MCL 500.3112, which provides in pertinent part:

> If there is doubt about . . . the proper apportionment among the persons entitled to the benefits, the insurer, the claimant, or any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate.

On appeal, the providers argue that the trial court was precluded from apportioning the $250,000 under MCL 500.3112. The providers' position, however, is once again contrary to the plain language of § 3112, which authorizes the circuit court to apportion benefits available under the no-fault act "[i]f there is doubt about . . . the proper apportionment among the persons entitled to the benefits . . . ." In this case, the available benefits were inadequate to satisfy the claims that had been presented to Nationwide. Moreover, the no-fault act is silent as to the order in which presented claims must be paid in the event that the available benefits are inadequate to satisfy all the existing claims. As a result, doubts arose regarding the proper apportionment of the available benefits. On this record, therefore, under the plain language of § 3112, the trial court had the authority to make an equitable apportionment of the finite benefits that were available.

The providers note that the apportionment provision was included in the no-fault act at its inception, when the act did not limit the benefits available to an injured individual through the MACP. They argue that, as a result, the Legislature could not have intended an equitable apportionment under the present circumstances. However, it is presumed that the Legislature is "aware of the consequences of its use or omission of statutory language and the effect of new laws on all existing laws." *Jones v Bitner*, 300 Mich App 65, 76–77; 832 NW2d 426 (2013). Consequently, we presume that the Legislature was aware of the language in § 3112 when it amended the statute and that it intended to leave intact the court's power to apportion benefits using equitable principles.

The providers next argue that, in *Covenant Med Ctr Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 212; 895 NW2d 490 (2017), our Supreme Court explained that the "reference to 'apportionment' cannot logically pertain to allowable expenses like the reasonable charges incurred for healthcare services, because an injured person owes the provider, and is entitled to PIP benefits for, the entirety of those allowable expenses under MCL 500.3107(1)(a), not an

apportioned amount." That explanation cannot survive the 2019 amendment to § 3112, because an injured person claiming PIP benefits through the MACP is now limited to $250,000 in PIP benefits. Moreover, the Supreme Court itself has explained that "apportionment of benefits is necessary when the allowable benefits are finite in amount, as is the case with survivor's loss benefits." *Covenant*, 500 Mich at 212 n 34. That is precisely the case here, where the PIP benefits are capped at $250,000.

Finally, the providers maintain that the trial court's apportionment of the benefits under MCL 500.3112 improperly considered future attendant-care benefits. We review the court's exercise of discretion under MCL 500.3112 for an abuse of discretion. See *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 31-32; 896 NW2d 39 (2016) (noting that a court's exercise of discretion afforded to it by statute is reviewed for an abuse of discretion). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes, or when the trial court makes an error of law." *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 372-372; 976 NW2d 109 (2021).

Here, although the trial court acknowledged that PIP benefits are not payable until the expenses are incurred, see MCL 500.3110(4), it nonetheless concluded that Crane's expected lifetime attendant-care benefits should be "considered incurred" for purposes of apportionment because of Crane's "undisputed need for lifetime attendant care services." That decision contravenes the cardinal rule that "[t]he words used by the Legislature are given their common and ordinary meaning." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The equitable discretion provided to the trial court under MCL 500.3112 of the no-fault act must be understood within the context of the act as a whole. Under the no-fault act, PIP benefits for accidental bodily injury "accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." MCL 500.3110(4). In *Andary v USAA Cas Ins Co*, 512 Mich 207, 243; 1 NW3d 186 (2023), our Supreme Court explained that "a PIP benefits claim for a specific amount of money to pay for medical expenses does not accrue until the expense is actually incurred." In *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) (alterations, quotation marks, and citation omitted), the Supreme Court explained that "to 'incur' means to become liable or subject to, especially because of one's own actions." Consequently, the trial court improperly awarded PIP benefits for future attendant-care expenses that Crane had not incurred. In doing so, it substituted its policy considerations for those expressed by the Legislature.

This is not to say, however, that the trial court was precluded from considering the incomplete nature of Crane's costs when equitably distributing the available funds. Under MCL 500.3112, the trial court has broad discretion to "tak[e] into account . . . other factors as the court considers appropriate." While the court may not rely on a legal fiction to treat future expenses as "incurred" when they plainly are not, it may consider a claimant's ongoing needs as part of its equitable analysis.

In sum, because MCL 500.3112 authorizes the trial court to apportion the available PIP benefits, and because MCL 500.3142 does not require payment on a FIFO basis, the trial court did not err by denying the providers' request for payment on that basis. However, because the no-fault act does not authorize payment of PIP benefits for losses that the injured person has not yet incurred, the trial court abused its discretion by awarding PIP benefits for future attendant care. Accordingly, we reverse, in part, the trial court's order apportioning the available PIP benefits,

-7-

and remand to the trial court for an equitable apportionment under MCL 500.3112. In making that apportionment, the trial court should be aware that Crane is not "medically indigent" and that it cannot "consider incurred" expenses that are not actually incurred, but also that it retains broad equitable discretion to consider Crane's ongoing needs and the relative hardships faced by the parties.

Reversed in part and remanded for further proceedings consistent with this opinion. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman