*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DONNA DAVIS,

   Plaintiff-Appellant,

v

RONALD SCOTT BALDINI,

   Defendant-Appellee.

FOR PUBLICATION
March 10, 2026
1:25 PM

No. 373696
Wayne Circuit Court
LC No. 23-015369-NI

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

M. J. KELLY, J.

Plaintiff, Donna Davis, appeals as of right the trial court order granting summary disposition in favor of defendant, Ronald Baldini, on her negligence claim for noneconomic damages. We reverse and remand for further proceedings consistent with this opinion.[1]

## I. BASIC FACTS

This case arises from a motor vehicle crash at the intersection of Merriam Road and Van Born Road in Detroit. Davis had been driving through the intersection when Baldini, who had a red light, drove straight through the intersection and crashed into the driver's side of her vehicle. Davis claimed that she was injured in the crash, and she filed a complaint against Baldini alleging negligence and seeking both economic and noneconomic damages.

The record reflects that Davis's daughter was the title owner of the vehicle that Davis was driving at the time of the crash. The vehicle was covered by a no-fault automobile insurance policy issued by Falls Lake National Insurance Company, but Davis was expressly listed as an excluded driver on that policy.

---

[1] Because Davis does not challenge the trial court's grant of summary disposition of her negligence claim for economic damages, that aspect of the court's order is not affected by this opinion and remains intact.

At her deposition, Davis testified regarding her use of her daughter's vehicle. In doing so, she explained that her daughter worked at the airport. Although Davis's daughter had initially driven herself to and from work, Davis eventually started dropping her daughter off and picking her up at the airport doors. She said that the reason for doing this was so that her daughter did not have to use the airport shuttle to get to and from where she parked. Davis explained that her daughter would drive on the way to work and on the way back home after work. This occurred four times per week.

After dropping her daughter off, Davis would drive straight home and would remain there until it was time to pick her daughter up after work. Davis testified that she had "full use" of the vehicle when taking her daughter to work, but she explained that she only used it for the trip to and from work. She stressed that she "never" used it for any other purpose. After returning from dropping her daughter off, the vehicle just "sat there" until it was time to pick her daughter up. Davis further explained that if she had to go somewhere while her daughter was at work, her other daughter would pick her up and drive her to her destination. Similarly, when she went to her own place of employment, she would be dropped off at work and would receive a ride home with a co-worker. Davis "always waited until" her daughter was off work to do "shopping and everything [else] together." Still, Davis admitted that she did not have to request permission to use the vehicle. She also agreed that she had the keys to the vehicle while her daughter was at work. She clarified that she only used her daughter's keys and did not have her own set of keys. Further, she did not put gasoline into the vehicle or take it in for any repairs.

Following discovery, Baldini moved for summary disposition under MCR 2.116(C)(8) and (10). He argued that because Davis was an excluded driver on the insurance policy covering the vehicle, she was precluded from recovering personal protection insurance (PIP) benefits. See MCL 500.3113. Baldini argued that, because Davis was not entitled to PIP benefits, she could not bring a claim under MCL 500.3135(3)(c) to recover economic damages because the statute only allows for the recovery of benefits in "excess" of PIP benefits. Further, Baldini asserted that, based upon Davis's deposition testimony, she was a constructive owner of the vehicle under the definition of "owner" stated in MCL 500.3101(2)(g)(*i*). He maintained that, because Davis was the constructive owner of the vehicle and was operating it without insurance, she was precluded from recovering noneconomic damages from him by MCL 500.3135(2)(c). Lastly, he asserted that Davis had failed to establish a serious impairment of an important body function. In response, Davis generally argued that being an excluded driver under the insurance policy did not bar her tort claim, that she did not constructively own the vehicle, and that she had, in fact, sustained a serious impairment of an important body function.

Following oral argument on the motion, the trial court first determined that as a result of Davis being a specifically excluded driver under the policy covering the vehicle, she could not recover "excess" damages under MCL 500.3135(3)(c) because she was not entitled to recover any PIP benefits. Next, the court determined that Davis was a constructive owner of the vehicle given her testimony that she had access to the vehicle's keys, drove the vehicle regularly, did not have to ask permission to drive it, and had driven it for months. The court reasoned Davis was, therefore, the owner of an uninsured vehicle and was not entitled to recovery under MCL 500.3135(2)(c). As a result, the court entered an order granting summary disposition to Davis's

-2-

negligence claims for economic and noneconomic damages. Thereafter, Davis moved for reconsideration, which the court denied.[2] This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Davis argues that the trial court erred by summarily dismissing her tort claim for non-economic damages because she is not a constructive owner of the vehicle. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). When deciding a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

### B. ANALYSIS

Damages recoverable for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle are statutorily limited. As relevant to the issue raised on appeal, under MCL 500.3135(1), a plaintiff may not recover such damages unless he or she sustained a threshold injury, i.e., death, serious impairment of a body function, or permanent serious disfigurement.[3] However, under MCL 500.3135(1)(2)(c), "[d]amages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101(1) at the time the injury occurred." Here, Davis was an excluded driver under the no-fault insurance policy in effect for the vehicle that she was driving at the time of the motor vehicle crash. "[A] validly excluded driver's act of driving the insured vehicle at the time of the accident renders the vehicle uninsured." *Bronson Health*

---

[2] In support of her motion for reconsideration, Davis submitted an affidavit from her daughter. On appeal, Davis does not challenge the trial court's decision to deny her motion for reconsideration without addressing her daughter's affidavit. "[A] motion for reconsideration is a vehicle to identify 'a palpable error' in the *prior ruling*." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017), citing MCR 2.119(F)(3). As a result, a trial court does not abuse its discretion when it denies "a motion for reconsideration that rests on testimony that could have been presented the first time the issue was argued." *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). Indeed, "a court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik*, 319 Mich App at 42 (quotation marks and citation omitted). Because the affidavit was not presented the first time the issue was argued and because the trial court did not exercise its discretion to consider the affidavit on reconsideration, we will not consider the affidavit when evaluating whether the trial court erred by granting summary disposition in this matter.

[3] Davis maintains that, as a result of the crash, she sustained a serious impairment of a body function. Although Baldini challenged that assertion in the trial court, the court did not reach the issue. Accordingly, whether she sustained a threshold injury is not an issue currently before this Court.

*Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 348; 948 NW2d 115 (2019) (quotation marks, citation, and alteration omitted). Thus, as to Davis, who was a validly excluded driver, the "security required by section 3101(1)" was not in effect for the vehicle at the time of the crash.

Her ability to maintain a claim for noneconomic benefits, therefore, turns on whether she was an "owner" of the vehicle she was driving at the time that the crash occurred. As a general rule, "[t]he question of ownership is one of fact that is to be decided by the factfinder." *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 133; 489 NW2d 137 (1992). The statutory definition of "owner" includes "a person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." MCL 500.3101(3)(l)(*i*).

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690-691; 593 NW2d 215 (1999), this Court interpreted the phrase "having the use" of a motor vehicle as meaning "using the vehicle in ways that comport with concepts of ownership." The *Ardt* Court reasoned:

> The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period. Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing. These indications imply that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another. [*Id*.]

There was a question of fact in *Ardt* about whether the injured claimant was an "owner" of the motor vehicle he was driving at the time of the accident given "the spotty and exceptional pattern of [the claimant's] usage" of the motor vehicle to which one witness testified "may not be sufficient to render [the claimant] an owner of the truck," whereas "the regular pattern of unsupervised usage" to which another witness testified "may well support a finding that [the claimant] was an owner for purposes of the statute." *Id*.

In contrast, in *Chop v Zielinski*, 244 Mich App 677, 682; 624 NW2d 539 (2001), this Court determined that the plaintiff was an "owner" based upon her deposition testimony. Specifically, the plaintiff testified

> during her deposition that she kept the car parked at her apartment complex, which was a residence she kept separate from her ex-husband, drove the car to and from work on a daily basis, and used the car for other personal errands. Plaintiff's use of the car in such a manner was possessory use that comports with the concepts of ownership. There is no indication that plaintiff used the car under the specific direction of her ex-husband or with her ex-husband's permission. Indeed, plaintiff's own testimony regarding her regular use of the car reveals that she exercised ownership rights over the vehicle. . . . [*Id*. at 681.]

Further, the plaintiff in *Chop* believed that she had been awarded the car under a judgment of divorce. *Id.* at 681-682.

Baldini maintains that Davis's use of the vehicle was possessory and proprietary. In support, he directs this Court to her testimony that she drove the vehicle when helping her daughter get to and from work, that she had been doing it for months before the crash, that she had "full use" of the vehicle while her daughter was at work, that she had the keys, and that she did not have to ask for permission to use it. He asserts that this evidence shows that Davis had "unrestricted, regular daily use of" the vehicle in the months leading up to the crash. We agree that is one possible interpretation of the evidence.

Yet, viewing the evidence in the light most favorable to Davis, the non-moving party, there remains a genuine issue of material fact regarding whether Davis's use was proprietary or possessory. Unlike the plaintiff in *Chop*, Davis lived with her daughter, the title owner of the vehicle. Baldini's reference to Davis's testimony that she had "full use" of the vehicle is misplaced, given that, in context, Davis testified such full use only occurred when she was using the vehicle to help her daughter get to and from work. Indeed, Davis testified that she only used the vehicle when dropping her daughter off at work and then returning home after doing so. She denied any other uses of the vehicle. In particular, Davis testified that if she had to do something while her daughter was at work, her other daughter would come and pick her up and drive her to her destination in another vehicle. Additional personal errands, including shopping, were done with her daughter when she got home from work. Further, unlike the plaintiff in *Chop*, Davis did not use the vehicle to get to or from her own employment or for any other personal business.

Davis's testimony, ultimately, reflects that she only used the vehicle for her daughter's benefit. As noted above, her daughter worked at the airport. When she drove herself to work, she had to use the shuttle to get to and from the parking lot. It is reasonable to infer that such an added step was inconvenient to Davis's daughter and that the process of being dropped off at the airport doors and then picked up made her daily commute far easier. The fact that Davis kept her daughter's keys while her daughter was at work is also not that dispositive. Davis explained that there was only one set of keys. Thus, in order to actually return home after dropping her daughter off, Davis had to retain possession of the keys. The fact that Davis did not have her own set is indicative that her use was not proprietary or possessory. Rather, it was for the limited purpose of facilitating her daughter's commute to and from work. Likewise, the mere fact that she did not have to ask permission to use the vehicle is not dispositive given that Davis's actual use of the vehicle allows for the reasonable inference that such permission was unnecessary given that the use was only for her daughter's benefit.

In sum, we conclude that, viewing Davis's deposition testimony in the light most favorable to her, there is a genuine issue of material fact regarding whether her use of the vehicle was proprietary or possessory so as to constitute constructive ownership under MCL 500.3101(3)(l)(*i*). Because there was a question of fact as to whether Davis was an owner of the vehicle under MCL 500.3101(3)(l)(*i*), summary disposition as to Davis's claim for noneconomic damage was not appropriate. Reversal and remand for further proceedings is, therefore, required. On remand, the trial court should consider whether Davis's claim is barred based upon her alleged failure to establish that she sustained a threshold injury under MCL 500.3135(1).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Davis may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado
/s/ Christopher M. Trebilcock